# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
09/12/2005
Log Number 510531231

**TO:**  Donna Messinger
Bristol-Myers Squibb Company
345 Park Avenue
New York, NY, 10154

**RE:**  **Process Served in California**

**FOR:**  Bristol-Myers Squibb Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | The County of Santa Clara, et al, Plts. vs. Astra USA Inc, et al, Dfts. To: Bristol-Myers Squibb Company |
| **DOCUMENT(S) SERVED:** | Notice of Hearing |
| **COURT/AGENCY:** | Alameda County, Superior Court, . Case # G05228108 |
| **NATURE OF ACTION:** | Summons and Complaint - Notice of hearing pertaining to the above entitled matter. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Courier on 09/12/2005 |
| **APPEARANCE OR ANSWER DUE:** | Complex Determination Hearing: 09/16/2005 @ 2:00 p.m. Case Management Conference: 10/17/2005 @ 1:30 p.m. |
| **ATTORNEY(S) / SENDER(S):** | Patrick J. Coughlin, Esq. Lerach Coughlin Stoia Geller Rudman & Robbins LLP 100 Pine Street Suite 2600 San Francisco, CA, 94111 (415) 288-4545 |
| **REMARKS:** | Appears to be in connection with documents forwarded on 08/19/2005. |
| **ACTION ITEMS:** | Telephone, Donna Messinger , 212-546-4568 *Left full information on Donna's voicemail.* SOP Papers with Transmittal, via Fed Ex Priority Overnight, 790640936805 Image SOP - Page(s): 4 Email Notification, Donna Messinger donna.messinger@bms.com |
| **SIGNED:** **PER:** **ADDRESS:** | C T Corporation System Edmond Avakem 818 West Seventh Street Los Angeles, CA, 90017 |
| **TELEPHONE:** | 213-627-8252 |

Page 1 of 1 / MS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.

**A-1**

```
┌  Lerach, Coughlin, Stoia & Robbins,    ┐    ┌  Astra USA, Inc.                      ┐
   LLP
   Attn:  Mottek, Jacqueline E.
   100 Pine Street
└  Suite 2600                            ┘    └                                       ┘
   San Francisco, CA   94111
```

## Superior Court of California, County of Alameda
### Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| The County of Santa Clara<br><br>Plaintiff/Petitioner(s)<br>VS.<br><br>Astra USA, Inc.<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG05228108<br><br><br>NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:

> Complex Determination Hearing
> Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 09/16/2005    TIME: 02:00 PM    DEPARTMENT: 22
LOCATION:  Administration Building, Fourth Floor
        1221 Oak Street, Oakland

Case Management Conference:
DATE: 10/17/2005    TIME: 01:30 PM    DEPARTMENT: 22
LOCATION:  Administration Building, Fourth Floor
        1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 1800 et seq. and Local Rule 4.2 (Unified Rules of the Superior Court, County of Alameda), matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 22 operates a tentative ruling voice mail system at (510) 271-5106 after 5:00 p.m. two court days preceding the hearing date. Please consult Appendix E to Local Rules 4 and 5 of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 22.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 22.

**A-2**

If the information contained in this notice requires change or clarification, please call the courtroom clerk for Department 22 at (510) 272-6157.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CONFERENCE CALL SERVICES, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 527-7327, or faxing a service request form to (800) 833-5133. This service is subject to charges by the vendor.

Dated:  08/16/2005

Executive Officer / Clerk of the Superior Court

By        _Sandra Cole_
                              Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 08/16/2005.

By        _Sandra Cole_
                              Deputy Clerk

A-3

This service area is provided for your internal use. Service must be marked on airbill.

FedEx Service:

FedEx. PRIORITY OVERNIGHT

Extremely Urgent

emp: 436335 09SEP05

MON

TRK# 8527 6856 3654 FORM 0215

Deliver By: 12SEP05

A1

LAX

90017 -CA-US

WZ EMTA

419

500

FedEx Express US Airbill

FedEx Tracking Number 8527 6856 36

1 From. This portion can be removed for Recipient's records.

Date 9-9-2005 FedEx Tracking Number 852768563654

Sender's Name Kiyoko Freund Phone 415 288-4545

Company LERACH COUGHLIN ET AL

Address 100 PINE ST FL 26

Dept./Floor/Suite/Room

City SAN FRANCISCO State CA ZIP ...-5212

2 Your Internal Billing Reference 050171-00001

3 To

Recipient's Name A/o CT Corporation System Phone 213 627-8252

Company Bristol-Myers Squibb Company

Recipient's Address 818 W 7th St.

We cannot deliver to P.O. boxes or P.O. ZIP codes.

Dept./Floor/Suite/Room

Address

To request a package be held at a specific FedEx location, print FedEx address here.

City Los Angeles State CA ZIP 90017

NO POUCH NEEDED.
Peel and stick application instructions.
RECIPIENT: PEEL HERE

4a Express Package Service

- [x] FedEx Priority Overnight — Next business morning*
- [ ] FedEx Standard Overnight — Next business afternoon*
- [ ] FedEx First Overnight — Earliest next business morning delivery to select locations*
- [ ] FedEx 2Day — Second business day*
- [ ] FedEx Express Saver — Third business day*

FedEx Envelope rate not available. Minimum charge: One-pound rate

4b Express Freight Service — Packages over 150 lbs.

- [ ] FedEx 1Day Freight* — Next business day**
- [ ] FedEx 2Day Freight — Second business day**
- [ ] FedEx 3Day Freight — Third business day**

* Call for Confirmation:

5 Packaging — * Declared value limit $500

- [x] FedEx Envelope*
- [ ] FedEx Pak* — Includes FedEx Small Pak, FedEx Large Pak, and FedEx Sturdy Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

6 Special Handling — Include FedEx address in Section 3.

- [ ] SATURDAY Delivery — Available ONLY for FedEx Priority Overnight, FedEx 2Day, FedEx 1Day Freight, and FedEx 2Day Freight to select ZIP codes
- [ ] HOLD Weekday at FedEx Location — Not available for FedEx First Overnight
- [ ] HOLD Saturday at FedEx Location — Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations

Does this shipment contain dangerous goods? One box must be checked.

- [x] No
- [ ] Yes — As per attached Shipper's Declaration
- [ ] Yes — Shipper's Declaration not required
- [ ] Dry Ice — Dry Ice, 9, UN 1845 ___ x ___ kg
- [ ] Cargo Aircraft Only

Dangerous goods (including Dry Ice) cannot be shipped in FedEx packaging.

7 Payment Bill to: Enter FedEx Acct. No. or Credit Card No. below. Obtain Recip. Acct. No.

- [x] Sender — Acct. No. in Section 1 will be billed.
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

[redacted]

Total Packages | Total Weight | Total Charges | Credit Card Auth.

†Our liability is limited to $100 unless you declare a higher value. See the FedEx Service Guide for details.

8 Sign to Authorize Delivery Without a Signature

By signing you authorize us to deliver this shipment without obtaining a signature and agree to indemnify and hold us harmless from any resulting claims. Questions? Visit our Web site at fedex.com or call 1.800.GoFedEx 1.800.463.3339.

466

8527 6856 3654

0313094044

155476F50
REV 06/04 RT

Recycled Paperboard
MINIMUM 35% POST CONSUMER CONTENT

A-4

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
08/19/2005
Log Number 510476887

**TO:**   Donna Messinger
Bristol-Myers Squibb Company
345 Park Avenue
New York, NY, 10154

**RE:**   **Process Served in California**

**FOR:**  Bristol-Myers Squibb Company (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | The County of Santa Clara, Pltf. vs. Astra USA, Inc., et al., including Bristol-Myers Squibb Company, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment to Summons, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Alternative Dispute Resolution Information Package, Stipulation for Alternative Dispute Resolution, Complaint |
| **COURT/AGENCY:** | Oakland, Superior Court, CA<br>Case # G05228108 |
| **NATURE OF ACTION:** | Summons and Complaint - Business tort/unfair business practice |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/19/2005 at 11:03 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 Days |
| **ATTORNEY(S) / SENDER(S):** | Jacqueline E. Mottek, Esq.<br>Lerach Coughlin Stoia Geller Rudman & Robbins LLP<br>100 Pine Street, Suite 2600<br>San Francisco, CA, 94111<br>415-288-4545 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day, 790126483729<br>Image SOP - Page(s): 34<br>Email Notification, Donna Messinger donna.messinger@bms.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Edmond Avakem<br>818 West Seventh Street<br>Los Angeles, CA, 90017<br>213-627-8252 |

Page 1 of  1 / SN

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ASTRA USA, INC., ASTRAZENECA PHARMACEUTICALS LP,
AVENTIS PHARMACEUTICALS INC., BAYER CORPORATION,
BRISTOL-MYERS SQUIBB COMPANY, See Attached,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THE COUNTY OF SANTA CLARA

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* G05228108 |
|---|---|

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse (Northern Division)
1225 Fallon Street, Room 109, Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jacqueline E. Mottek, Esq., Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600, San Francisco, CA 94111, Telephone: (415) 288-4545

DATE: AUG 16 2005 (Fecha)    Clerk, by *Alphonsine Oates*, Deputy (Secretario) (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bristol-Myers Squibb Company
   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 8-19-05

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

A-6

ATTACHMENT TO SUMMONS

Astra USA, Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

AstraZeneca Pharmaceuticals LP
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

Aventis Pharmaceuticals Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA .90017

Bayer Corporation
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

Bristol-Myers Squibb Company
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

Burroughs Wellcome Co.
c/o CT Corporation System
225 Hillsborough Street
Raleigh, NC  27603

Glaxo Wellcome Inc.
c/o CT Corporation System
225 Hillsborough Street
Raleigh, NC  27603

Pfizer Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

Schering-Plough Corporation
2000 Galloping Hill Rd.
Kenilworth, NJ  07033-0530

TAP Pharmaceutical Products Inc.
c/o CT Corporation System
208 So. LaSalle Street, Suite 814
Chicago, IL  60604-1101

Wyeth-Ayerst Laboratories, Inc.
5 Giralda Farms
Madison, NJ  07940

Zeneca Inc.
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA  90017

ZLB Behring LLC
1020 First Avenue
P.O. Box 61501
King of Prussia, PA  19406-0901

T:\CptDraft\Consumer\340B\ATTACHMENT TO SUMMONS_340B Bayer.doc

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKAGE
Effective April 15, 2005

Instructions to Plaintiff / Cross-Complainant

> In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
> is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the
complaint, an Alternative Dispute Resolution (ADR) information package that
includes, at a minimum, all of the following:

    (1) General information about the potential advantages and disadvantages
    of ADR and descriptions of the principal ADR processes . . .

    (2) Information about the ADR programs available in that court . . .

    (3) In counties that are participating in the Dispute Resolution Programs
    Act (DRPA), information about the availability of local dispute resolution
    programs funded under the DRPA . . .

    (4) An ADR stipulation form that parties may use to stipulate to the use
    of an ADR process.

(b) Court may make package available on Web site . . .

<u>(c) The plaintiff must serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants must serve a
copy of the ADR information package on any new parties to the action
along with the cross-complaint.</u>

Rev 4/05

A-9

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

Rev 4/05

A-10

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
222278 Redwood Road, Castro Valley, CA 94546
Phone: (510) 733-4940   fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Phone: (510) 548-2377   fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Concillation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
433 Jefferson Street, Oakland, CA 94607
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
1789 Barcelona Street, Livermore, CA 94550
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
1212 Broadway Street, Suite 837, Oakland, CA 94612
Phone: (510) 444-6351   fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

Rev 4/05

A-11

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94607 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice,<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

_____ Plaintiff

vs.

Case No.: _____

**STIPULATION FOR ALTERNATIVE
DISPUTE RESOLUTION (ADR)**

_____ Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

A-12

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

Jacqueline E. Mottek (Bar No. 124448)
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600, San Francisco, CA 94111
TELEPHONE NO.: (415) 288-4545   FAX NO.: (415) 288-4534
ATTORNEY FOR (Name): Plaintiff the County of Santa Clara

ENDORSED
FILED
ALAMEDA COUNTY

AUG 1 6 2005

CLERK OF THE SUPERIOR COURT
By Alphonsine Oates, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street, Room 109
MAILING ADDRESS: 1225 Fallon Street, Room 109
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse (Northern Division)

CASE NAME:
County of Santa Clara v. Astra USA, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: G05228108 |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE:<br>DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [✓] Large number of separately represented parties   d. [✓] Large number of witnesses
b. [✓] Extensive motion practice raising difficult or novel   e. [✓] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve      in other counties, states or countries, or in a federal court
c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial post-judgment judicial supervision
3. Type of remedies sought (check all that apply):
a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify): 4
5. This case [✓] is [ ] is not a class action suit.
Date: August 16, 2005

Jacqueline E. Mottek                    ▶ _Jacqueline E. Mottek_
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2003] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 201.8, 1800–1812;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

A-13

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must check all five items on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)*(08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation(14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or
Residential.)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil
Litigation (Cal. Rules of Court Rule
1800-1812)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Toxic Tort/Environmental (30)
Insurance Coverage Claims
*(arising from provisionally
complex case type listed above)*
(41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Tax
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)*
(43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: County of Santa Clara v. Astra USA, Inc., et al. | Case Number: RG05228108 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| | | |
|---|---|---|
| [X] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) | |
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) | |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (Check only one) | |
|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 | Auto tort (G) |
| | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] 75 | Asbestos (D) |
| | Product liability (24) | [ ] 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] 80 | Civil rights (G) |
| | Defamation (13) | [ ] 84 | Defamation (G) |
| | Fraud (16) | [ ] 24 | Fraud (G) |
| | Intellectual property (19) | [ ] 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] 85 | Other employment (G) |
| | | [ ] 53 | Labor comm award confirmation |
| | | [ ] 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] 81 | Collections (G) |
| | Insurance coverage (18) | [ ] 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] 94 | Unlawful Detainer - commercial | Is the deft. in possession |
| | Residential (32) | [ ] 47 | Unlawful Detainer - residential | of the property? |
| | Drugs (38) | [ ] 21 | Unlawful detainer - drugs | [ ] Yes [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] 49 | Writ of mandate |
| | | | Is this a CEQA action (Publ.Res.Code section 21800 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 | Enforcement of judgment |
| | | [ ] 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] 68 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 | Change of name |
| | | [ ] 69 | Other petition |

202-19 (5/1/00)

A-13

A-15

1  LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2  PATRICK J. COUGHLIN (111070)
    JACQUELINE E. MOTTEK (124448)
3  AELISH M. BAIG (201279)
    JENNIE LEE ANDERSON (203586)
4  100 Pine Street, Suite 2600
    San Francisco, CA 94111
5  Telephone: 415/288-4545
    415/288-4534 (fax)

6  OFFICE OF SANTA CLARA
    COUNTY COUNSEL
7  ANN MILLER RAVEL (62139)
    70 West Heading Street
8  9th Floor East Wing
    San Jose, CA 95110
9  Telephone: 408/299-5900
    408/292-7240 (fax)

10

11  Attorneys for Plaintiff the County of Santa Clara

ENDORSED
FILED
ALAMEDA COUNTY

AUG 1 6 2005

CLERK OF THE SUPERIOR COURT
By Alphonsine Oates, Deputy

HAGENS BERMAN LLP
STEVE W. BERMAN
1301 FIFTH AVENUE, SUITE 2900
Seattle, WA 98101
Telephone: 206/623-7292
206/623-0594 (fax)

12

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                     COUNTY OF ALAMEDA

| | |
|---|---|
| 15 THE COUNTY OF SANTA CLARA, On Behalf of Itself and All Others Similarly Situated, | Case No: |
| 16                     Plaintiff, | CLASS ACTION |
| 17     vs. | COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF |
| 18 ASTRA USA, INC., | CALIFORNIA UNFAIR COMPETITION LAW, FOR VIOLATION OF CALIFORNIA |
| 19 ASTRAZENECA PHARMACEUTICALS LP, | FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT |
| AVENTIS PHARMACEUTICALS INC., | |
| 20 BAYER CORPORATION, | |
| 21 BRISTOL-MYERS SQUIBB COMPANY, | DEMAND FOR JURY TRIAL |
| BURROUGHS WELLCOME CO., | |
| 22 GLAXO WELLCOME INC., | |
| PFIZER INC., | |
| 23 SCHERING-PLOUGH CORPORATION, | |
| TAP PHARMACEUTICAL PRODUCTS INC., | |
| 24 WYETH-AYERST LABORATORIES, INC. | |
| 25 ZENECA INC., | |
| ZLB BEHRING LLC, and | |
| 26 DOES 1 through 100, inclusive, | |
| 27                 Defendants. | |

28

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

## PRELIMINARY STATEMENT

1.      This action is filed by plaintiff the County of Santa Clara in compliance with Cal. Bus. & Prof. Code §17204 on behalf of itself and on behalf of all other similarly situated cities and counties in California (collectively, the "Counties") who have responsibility for funding public hospitals, affiliated pharmacies, community health centers and/or other public healthcare providers and who, in particular, fund the costs for prescription drugs for the homeless, the disabled, children, and the indigent through the Public Health Service Act of 1992 (the "PHS Act" or "PHS"), §340B Drug Discount Program (the "340B Program") (42 U.S.C. §256b).  This action alleges that the County of Santa Clara and the Counties were overcharged for prescription and over-the-counter drugs under the §340B Program pursuant to the Public Health Service Act.

2.      In 1992, through enactment of the PHS Act, 42 U.S.C. §256b, Congress established the §340B Program as a condition for participation in Medicaid.  The PHS Act requires pharmaceutical manufacturers to provide a statutorily defined discount on outpatient drugs to qualified entities, thereby allowing those healthcare providers, public hospitals, community health centers and other qualified entities to buy pharmaceuticals for their patients at a reduced rate, typically 20%-35% less than non-covered entities would pay for the same pharmaceuticals.  These participating entities (the "§340B Participants") spent $3.4 billion on outpatient drugs in calendar year 2003 alone, serving the disadvantaged in need of prescription drugs.

3.      The Counties have spent considerable sums for the provisions of outpatient pharmaceuticals for their residents.  Last year, in 2004 alone, the County of Santa Clara spent more than $30 million, funding the purchase of prescription and over-the-counter drugs on behalf of §340B Participants.  During fiscal year 2003, the County of Santa Clara spent approximately $29 million, funding the purchase of prescription and over-the-counter drugs on behalf of §340B Participants.  For 2005, the county has already expended more than $31 million for purchases of §340B pharmaceuticals and over-the-counter drugs.

4.      In March 2003, the United States Department of Health and Human Services ("HHS"), Office of Inspector General ("OIG"), the premier healthcare finance investigatory agency

- 1 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW, FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

Case 3:05-cv-03740-WHA    Document 1-1    Filed 09/15/05    Page 19 of 39

1    in the country, issued a report, entitled "Pharmaceutical Manufacturers Overcharged 340B-Covered

2    Entities." OIG Report No. A-06-01-00060 (the "OIG's 2003 Report"). The report estimated that

3    five pharmaceutical manufacturers overcharged §340B Participants $6.1 million for sales occurring

4    during the one-year period ending September 30, 1999.

5        5.    On June 29, 2004, the OIG issued a second report (OIG Report No. OEI-05-02-

6    00070) (the "OIG's 2004 Report"), concluding that pharmaceutical manufacturers repeatedly had

7    caused participants in the §340B Program to overpay for prescription drugs. In particular, the

8    OIG's 2004 Report found that *more than 97%* of the §340B Participants surveyed had paid prices

9    for prescription drugs that exceeded the prices that may lawfully be charged to §340B Participants.

10   The OIG's 2004 Report further found all types of drugs that manufacturers had overcharged §340B

11   Participants, extrapolating from September 2002, a single month of overcharges of $41.1 million,

12   that §340B Participants have overpaid for prescription drugs by nearly $500 million per year. A

13   significant portion of these monies have been wrongfully taken and should be returned to the

14   Counties of California, including the County of Santa Clara, to satisfy the unmet need for critical

15   healthcare services in their communities.

16       6.    Under the §340B Program, §340B Participants are denied access to the prescription

17   drug pricing data necessary to determine the lawful price they are to be charged for the prescription

18   drugs they purchase because of the industry's long-standing insistence that all pricing information,

19   no matter how old, is confidential and proprietary.

20       7.    Based on the OIG's 2003 and 2004 Reports, as well as certain plea agreements

21   involving violation of the Medicaid Best Price Reporting Requirements, plaintiffs are informed and

22   believe, that the County of Santa Clara and all California Counties similarly situated through their

23   funding of §340B Participants, including, for example, Santa Clara Valley Medical Center ("Valley

24   Medical Center"), have overpaid for prescription drugs manufactured and sold by defendants.

25       8.    Plaintiffs bring this action in part to obtain an accounting concerning the pricing of

26   defendants' products they purchased so that they may determine the extent to which they overpaid

27   for defendants' products. Plaintiffs also assert claims for violation of Cal. Bus. & Prof. Code

28

- 2 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-18

1  §§17200, et seq., the Unfair Competition Law (the "UCL"), for violation of the California False

2  Claims Act, Cal. Gov't Code §§12650, et seq., and for unjust enrichment.

3  <div align="center">**JURISDICTION AND VENUE**</div>

4      9.      Jurisdiction is proper in this Court pursuant to Cal. Code Civ. Proc. §§394, 395 and

5  395.5.  This Court has personal jurisdiction over the parties because plaintiffs submit to the

6  jurisdiction of the Court and defendants have systematically and continually conducted business in

7  the County of Alameda and throughout the State of California.  The allegations and claims for relief

8  in this Complaint arise from acts committed in this state and elsewhere that would violate the UCL.

9  UCL claims and claims arising under the California False Claims Act, Cal. Gov't Code §§12650, et

10  seq., may be adjudicated under this state's lawful authority and are within the jurisdiction of this

11  Court.

12      10.     Venue is proper in this judicial district because some or all of the defendants do

13  business in this district, and some of the wrongful acts alleged herein took place in this district.

14  Plaintiffs are informed and believe that the defendants have received substantial revenue from the

15  practices alleged to be unlawful and from their overcharging of pharmaceuticals in this County.

16  Venue is also proper in this district because venue under the UCL is permitted in any court in this

17  state of competent jurisdiction.

18  <div align="center">**THE PARTIES**</div>

19  <div align="center">**Plaintiffs**</div>

20      11.     Plaintiff, the County of Santa Clara ("Santa Clara"), has fiscal responsibility for

21  Valley Medical Center, a public disproportionate share hospital funded by Santa Clara, and for

22  clinics in the county that are covered entities under the §340B Program, including the pharmacies

23  that are affiliated with Valley Medical Center, as well as other §340B Participants.  Through the

24  funding of these entities, Santa Clara provides healthcare to the indigent and disadvantaged at

25  Valley Medical Center, its pharmacy, and other Santa Clara pharmacies.  Other healthcare providers

26  funded by Santa Clara are the Health Centers Consolidation Act of 1996, §330(e) Community

27  Health Centers of Federally Qualified Health Centers (42 U.S.C. §254b) and are, and have been at

28

<div align="center">- 3 -</div>

<div align="center">COMPLANT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL.UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL.FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT</div>

1 all times pertinent hereto, participants in the §340B Program through which they obtain prescription
2 and over-the-counter drugs. Santa Clara has expended county funds to purchase pharmaceuticals
3 used in the outpatient context from each of the named defendants during all relevant times. Santa
4 Clara has lost money and suffered an injury in fact as a result of the defendants' unlawful conduct
5 as alleged herein.

6      12.    Under Cal. Welf. & Inst. Code §17000 ("Welfare Code §17000"), the Counties are
7 required to provide healthcare to their residents as the "provider of last resort" or to assure that
8 residents who cannot get care elsewhere have at least their basic healthcare needs met by the
9 Counties.

10      13.    Individually and/or collectively, plaintiffs have purchased drugs from each of the
11 defendants listed below.

12 <div align="center">Defendants</div>

13      14.    Defendant AstraZeneca Pharmaceuticals LP is a Delaware corporation, with its
14 principal place of business located at 1800 Concord Pike, Wilmington, Delaware. AstraZeneca
15 Pharmaceuticals LP is owned and controlled by AstraZeneca PLC, a public limited liability
16 company domiciled in the United Kingdom.

17      15.    Defendants Astra USA, Inc., Zeneca Inc., and AstraZeneca Pharmaceuticals LP are
18 collectively referred to as "AstraZeneca." AstraZeneca maintains research, development, and
19 manufacturing facilities worldwide, including in the United States. AstraZeneca reported annual
20 sales of $16.5 billion in 2001, with an operating profit of $4.2 billion. AstraZeneca manufactures
21 and markets several drugs for use in the outpatient setting, including, but not limited to, Zoladex®
22 (goserelin acetate), Nolvadex® (tamoxifen citrate), Tomudex® (ralitrexed), and Diprivian®
23 (propofol).

24      16.    Defendant Aventis Pharmaceuticals Inc. ("Aventis") is a Delaware corporation with
25 its principal place of business located at 300 Somerset Corporate Boulevard, Bridgewater, New
26 Jersey. Aventis is a wholly owned subsidiary of Aventis, S.A., a company domiciled in France.
27 Aventis is comprised of the U.S. commercial operations of predecessor companies Rhone-Poulenc
28

<div align="center">- 4 -</div>

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-20

1   Rorer, S.A. and Hoechst Marion Roussel, Inc. ("Hoechst").  Prior to its acquisition by Aventis,

2   Hoechst was a Delaware corporation with its principal place of business located at 10236 Marion

3   Park Drive, Kansas City, Missouri..  Aventis's principal business activities are the discovery,

4   development, manufacture and sale of prescription pharmaceuticals in the areas of cardiology,

5   oncology, infectious diseases, arthritis, allergies and respiratory disorders, diabetes and central

6   nervous system disorders.  Aventis reported U.S. net sales of approximately $5.8 billion in 2001.

7   Aventis is one of the manufacturers that have overcharged §340B Participants according to the

8   OIG's 2003 Report

9        17.    The drugs manufactured by Aventis, Hoechst and defendant ZLB Behring LLC

10  (collectively, the "Aventis Group") are used in the outpatient setting and may include, but are not

11  limited to: Anzemet® (dolasetron mesylate), Bioclate® (antihemo factor viii), Gammar® (immune

12  globulin), Helixate® (antihemo factor viii), Humate-P® (antihemo factor viii), Mononine®

13  (antihemo factor ix complex), Monoclate-P® (antihemo factor viii), and Taxotere® (docetaxel).

14       18.    Defendant Bayer Corporation ("Bayer") markets and distributes some 10,000

15  products in the United States and California.  Bayer is headquartered in Pittsburgh, Pennsylvania.

16  Bayer is in the business of developing, manufacturing and marketing pharmaceuticals and other

17  products throughout the United States, including, but not limited to, Viadur® (leuprolide acetate

18  implant), Avelox® (moxifloxacin hydrochloride), Koate®-DVI, Precose® (acarbose), Trasylol®

19  (aprotinin), Adalat CC® (nifedipine), Cipro® (ciprofloxacin HCl), Nimotop® (nimodipine),

20  Prolastin®, Gamimune® N, Adalat® (nifedipine) Biltricide® (praziquantel), Mycelex®

21  (clotrimazole), Otic Domeboro® (2% acetic acid-aluminum [modified Burrow's]), DTIC-Dome®

22  (dacarbazine), and Tridesilon® (desonide).

23       19.    Defendant Bristol-Myers Squibb Company ("Bristol") is headquartered at 345 Park

24  Avenue, New York, New York.  Bristol is in the business of researching, developing,

25  manufacturing and distributing pharmaceuticals and over-the-counter products.  Pharmaceuticals

26  manufactured by Bristol include, but are not limited to: Abilify® (aripiprazole), Avapro®

27  (irbesartan), Cardiolite® (kit for the preparation of Technetium Tc99m Sestamibi for injection),

28

- 5 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-21

1  ConvaTec Ostomy Care, ConvaTec Wound Therapeutics, Enfamil® (infant formula), Erbitux®

2  (Cetuixmab), Excedrin®, Plavix® (ciopidogrel bisulfate), Pravachol®

3  (pravastatin sodium tablets), Reyataz® (atazanavir sulfate), Sustiva® (efavirenz), TAXOL®

4  (paclitaxel injection), Vides® EC (didanosine, delayed-release capsules), Zepcor® (simvastin) and

5  Zerit® (stavudine). Bristol is one of the manufacturers that have overcharged §340B Participants

6  that is the subject of the OIG's 2003 Report.

7       20.    Defendants Glaxo Wellcome Inc. and Burroughs Wellcome Co. (collectively,

8  "Glaxo") are British-owned pharmaceutical manufacturers. Glaxo controls 45 percent of the AIDS

9  (Acquired Immune Deficiency Syndrome) drug market. Glaxo also manufactures and markets

10  numerous prescription drugs, including, but not limited to; Augmentin® (amoxicillin/clavolanate

11  potassium), Flonase® (fluticasome propionate), Emitrex®, Paxil® (paroxetine hydrochloride),

12  Wellbutrin® (bupropion hydrochloride), Zantac® (ranitidine hydrochloride), Zyban Contac®

13  (bupropion hydrycholoride), Geritol®, Nicoderm CQ®, Nytol®, Sominex®, Tagamet® (cimetidine

14  hyrochloride), and Tums®, as well as other drugs used to treat AIDS patients in the outpatient

15  setting. Glaxo has been identified in the OIG's 2003 Report as one of the manufacturers that have

16  overcharged §340B Participants.

17       21.    Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of

18  business at 235 East 42nd Street, New York, New York. Pfizer is one of the largest pharmaceutical

19  companies in the United States, whether measured by number of prescriptions written, revenues, or

20  market capitalization. Pfizer is in the business of manufacturing and distributing prescription

21  pharmaceuticals for use in the outpatient setting by providers nationwide. Pharmaceuticals that are

22  manufactured by Pfizer and used in an outpatient setting include, but are not limited to: Cerebyx®

23  (fosphenytoin sodium injection), Dilatin® (phenytoin), Diflucan® (fluconazole), Zithromax®

24  (azithromycin), Trovan® (trovafioxacin mesylate), and Unasyn® (ampicillin sodium/sulbactam

25  sodium). Pfizer is also named herein for drugs manufactured by Warner-Lambert Company which

26  it acquired in 2000.

27

28

- 6 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-22

1    22.    Defendant Schering-Plough Corporation ("Schering-Plough") is a New Jersey

2  corporation with its principal place of business located at 2000 Galloping Hill Road, Kenilworth,

3  New Jersey. Schering-Plough's primary business involves prescription products in core product

4  categories, including allergy and respiratory, anti-infective and anticancer, cardiovasculars,

5  dermatologicals and central nervous systems and other disorders. Schering-Plough's revenues in

6  2001 totaled $9.8 billion.

7    23.    Defendant TAP Pharmaceutical Products Inc. ("TAP") is located at 675 North Field

8  Drive, Lake Forest, Illinois. TAP was formed in 1977 as a joint venture between Abbott

9  Laboratories and Japanese-based Takeda Pharmaceutical Company Limited. TAP develops,

10 markets and sells prescription drugs that are used in the outpatient setting, including Lupron

11 Depot® (leuprolide acetate for depot suspension) and Prevacid® (lansoprazole), which is sold alone

12 and in dosing packages known as Prevpac® (lansoprazole, amoxicillin and clarithromycin) and

13 Prevacid® NapraPAC™ (lansoprazole and naproxen). TAP has been identified in the OIG's 2003

14 Report as one of the manufacturers that have overcharged §340B Participants.

15    24.    Defendant Wyeth-Ayerst Laboratories, Inc. ("Wyeth") is a corporation with its

16 principal place of business at Five Giralda Farms, Madison, New Jersey. According to its own

17 literature, Wyeth is a global leader in pharmaceuticals. Wyeth is in the business of manufacturing

18 and distributing prescription drugs that are used in outpatient settings. The drugs manufactured by

19 Wyeth that may be used in an outpatient setting include, but are not limited to, Effexor®

20 (venlafaxine), Protonix® (pantoprazole sodium), Benefix® (coagalin factor IX (recombinent),

21 Zosyn® (piperacillin and tazobactam), Mylotarg® (gemtuzumab ozogamicin), Rapamune®

22 (sirolimus), and Hibtiter® (dipthria CRM protein conjugate).

23    25.    Plaintiffs are informed and believe and thereon allege that each of the named

24 defendants, including those defendants named as Doe defendants, acted as the agent, employee,

25 representative partner, joint venture or co-conspirators of each of the other named defendants in the

26 commission of the acts and omissions alleged herein, and acted within the course and scope of his,

27 her or its duty as such agent, employee, representative, partner, joint venture or co-conspirator. The

28

- 7 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

1   acts of each such defendant were authorized and/or ratified by each other defendant, and together

2   constitute a single and continuing course of conduct.

3

## FACTUAL BACKGROUND

4
### The §340B Program

5

6       26.    In 1992, through enactment of §340B of the PHS Act, 42 U.S.C. §256b, Congress

7   established the §340B Program. The purpose of the §340B Program was to reduce drug prices used

in the outpatient context for public hospitals, community health centers and others that provide

8   healthcare to the homeless, the disabled, children, and the indigent. These providers are referred to

9   as "§340B Participants."

10

11       27.    To reduce prescription drug prices for §340B Participants, §340B requires

12   pharmaceutical manufacturers to ensure that §340B Participants pay no more than the "ceiling

price," a discounted price compared to the average manufacturers' price, for any pharmaceutical

13   product. Congress intended that savings be achieved by requiring pharmaceutical manufacturers to

14   give §340B Participants the "best price" for both prescription and over-the-counter drugs to help

15   "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing

16   more comprehensive services." H.R. Rep. 102-384, 102d Cong., pt. 2, at 12 (2d Sess. 1992).

17

18       28.    The §340B Program has become a critical mechanism to serve the healthcare needs

of the disadvantaged in their communities through safety net organizations. In calendar year 2003,

19   more than 10,500 eligible healthcare providers participated in the §340B Program and paid

20   estimated $3.4 billion for outpatient drugs. Section 340B Participants rely on the savings promised

21   by participation in the §340B Program to support their public service missions.

22

23   ### Administration of the §340B Program

24       29.    The §340B Program is overseen by the Health Resources and Services

Administration ("HRSA"). HRSA is an agency within HHS. The HRSA maintains programs and

25   services that have the responsibility for safeguarding the health and well-being of millions of

26   Americans. Each year, over 11 million mostly low-income and uninsured patients are treated in

27

28

-8-

1  HRSA's health centers, and over 27 million women, infants, children, and adolescents are served in
2  its maternal and child health programs.

3          30.     Immediate responsibility for oversight of the §340B Program resides in HRSA's
4  Office of Pharmacy Affairs ("OPA").   OPA administers the Pharmaceutical Pricing Agreement
5  ("PPA") signed by drug manufacturers pursuant to §340B who participate in the §340B Program.
6  OPA also maintains an electronic database of §340B Participants, and assists in establishing
7  affordable pharmacy services for new and expanding community health centers.

8          31.     The Centers for Medicare and Medicaid Services ("CMS"), another HHS agency,
9  also has responsibility for administration of the §340B Program.  Specifically, pursuant to an intra-
10  agency agreement with HRSA, CMS provides drug price calculations to, theoretically, OPA
11  enabling OPA to monitor drug manufacturers' compliance with their obligations to ensure that
12  §340B Participants pay best prices.

13          32.     The Counties bear the ultimate financial responsibility for their residents' healthcare.
14  Under Welfare Code §17000, California Counties must either be the healthcare "provider of last
15  resort" or assure that residents who cannot get care elsewhere have, at least, their basic healthcare
16  needs met.

17                        Terms of Participation in the §340B Program

18          33.     Section 340B requires pharmaceutical manufacturers to participate in the §340B
19  Program as a condition of having their drug charges reimbursed by the Medicaid program.  Charges
20  for more than 15 percent of all prescription drugs sold in the United States are reimbursed by the
21  Medicaid program.  All, or virtually all, pharmaceutical manufacturers participate in the §340B
22  Program and all of the defendants in this action participate in Medicaid and §340B Program.

23          34.     Section 340B further requires pharmaceutical manufacturers to execute a PPA with
24  the Secretary of HHS.  The PPA sets forth, among other things, the terms and conditions of the
25  manufacturers' participation in the §340B Program and their obligations to the §340B Participants.

26          35.     Under both §340B and the PPA, a pharmaceutical manufacturer is required to ensure
27  that §340B Participants pay no more for any product than the §340B ceiling price.  The §340B
28

- 9 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-25

1   ceiling price is based on drug cost data generated by pharmaceutical manufacturers pursuant to the

2   Medicaid Drug Rebate Statute, 42 U.S.C. §1396r-8, particularly the manufacturer's Average

3   Manufacturer Price ("AMP"), a term defined in 42 U.S.C. §1396r-8(k)(1); and the manufacturer's

4   Medicaid rebate amounts based on its lowest selling price, or "best price" as defined in 42 U.S.C.

5   §1396r-8(c)(1)(C). Manufacturers use their ceiling price determinations to establish their §340B

6   price lists.

7        36.    Under the PPA, the manufacturers also are responsible for ensuring that the prices

8   paid for drugs by §340B Participants are at or below the §340B ceiling price, regardless of whether

9   a §340B Participant purchases from a wholesaler or directly from the manufacturer.

10       37.    The PPA also imposes on manufacturers the responsibility to review each quarter the

11  electronic database maintained by OPA of all §340B Participants to determine which community

12  healthcare providers are participating in the §340B Program. This requirement underscores the duty

13  pharmaceutical manufacturers have to ensure that §340B Participants pay at or below the §340B

14  ceiling price for their pharmaceutical products.

15       38.    The express and essential purpose of §340B and the PPA is to provide §340B

16  Participants with a discount from the AMP, known as the "ceiling" or "best" price at which the

17  manufacturer sells the drug to any private purchaser.

18       39.    The plaintiff and all similarly situated Counties relied on the defendants' duty to

19  comply with §340B, and on their performance under the PPA, of which the plaintiffs are the

20  intended beneficiaries, to ensure that the prices plaintiffs paid for drugs did not exceed the §340B

21  ceiling price.

22                          **Non-Disclosure of Ceiling Price Data**

23       40.    Pharmaceutical manufacturers have long asserted that their cost and pricing data, no

24  matter how old, are proprietary business information and must be kept confidential. As a result,

25  pharmaceutical manufacturers refuse to disclose their cost and pricing information to purchasers,

26  including §340B Participants, even when the prices the purchasers are required to pay for the

27  manufacturers' products are expressly derived from this data.

28

- 10 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

1    41.    Defendants' concealment and failure to disclose true accurate cost and pricing

2  information that are the basis for the ceiling price prevented plaintiffs from filing this action earlier.

3    42.    Pursuant to the Medicaid Drug Rebate Statute, CMS receives the pharmaceutical

4  manufacturers' AMP and "best" pricing data, but maintains the data as confidential and does not

5  disclose it to §340B Participants. 42 U.S.C. §1396r-8(b)(3)(D).

6    43.    Based on the AMP and "best price" data CMS receives, pursuant to an intra-agency

7  agreement with HRSA, CMS calculates §340B ceiling prices and provides them to OPA. OPA,

8  however, does not have the resources to conduct audits of the manufacturers' prices to ensure that

9  drug manufacturers' charges to §340B Participants' do not exceed the §340B ceiling prices. OPA

10  does not have the program, technology, or staff to match its ceiling price data to the manufacturers'

11  data or in any way to verify the propriety of the prices the §340B Participants pay. Pharmaceutical

12  manufacturers know, or have reason to know, that OPA conducts inadequate or no monitoring of

13  their §340B prices.

14    44.    Pursuant to the PPA, OPA may initiate a process to resolve disputes between the

15  manufacturers and the §340B Participants. OPA may also terminate a drug manufacturer from the

16  §340B Program for violation of the PPA. To date, OPA has never initiated the dispute resolution

17  process or otherwise sought to invoke any of the remedies set forth in the PPA. Neither HRSA nor

18  OPA has the power or authority to impose consequences for violation of §340B on pharmaceutical

19  manufacturers. Hence, exhaustion of any requirement found in the PPA or under the OPA dispute

20  resolution process is, and will continue to be, futile.

21
22

<center>**Section 340B Participants Cannot Obtain Prescription
Drug Cost Data Without Judicial Assistance**</center>

23    45.    The plaintiffs do not possess and cannot without Court order obtain the information

24  necessary to verify that the prices the Counties pay for prescription drugs are at or below the §340B

25  ceiling price. Nor can they compel OPA to initiate action.

26    46.    The defendants fraudulently concealed the facts that they charged the plaintiffs more

27  than the best price as required under 42 U.S.C. §256b(a)(1). Plaintiffs did not and could not

28

<center>- 11 -</center>

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-27

1  reasonably discover these facts until at the earliest the date upon which the OIG Report was issued

2  in 2003.

3      47.      The plaintiffs have relied on the manufacturers' compliance with §340B and the PPA

4  to ensure that they pay no more than the ceiling price for any pharmaceutical product than any other

5  private purchaser of that product.

<center>The OIG Reports Reveal that §340B Participants Are<br>Systemically Overpaying for Drugs</center>

8      48.      In March of 2003, the OIG issued a report, entitled "Pharmaceutical Manufacturers

9  Overcharged 340B-Covered Entities." OIG's 2003 Report. The report estimates that five

10  pharmaceutical manufacturers (two of which have now merged) overcharged §340B Participants

11  $6.1 million for sales occurring during the one-year period ending September 30, 1999. Those

12  manufacturers are now conducting business as defendants here, Aventis, Bristol, Glaxo and TAP.

13      49.      Similarly, on June 29, 2004, the OIG issued a report, entitled "Appropriateness of

14  340B Drug Prices." OIG's 2004 Report. The OIG's 2004 Report was based on an investigation

15  and analysis of prices paid for drugs by §340B Participants in a single month, September 2002. The

16  OIG's 2004 Report concluded that §340B Participants were repeatedly and widely overcharged for

17  the pharmaceutical manufacturers' products they purchased. Specifically, for September 2002

18  alone, the month of the sample, the OIG reported that:

19      •   31 percent of sampled drug purchased by §340B Participants exceeded the §340B
            ceiling price;

20

21      •   Section 340B Participants overpaid an estimated $41.1 million on drug expenditures
            of $269 million;

22      •   36 of the 37 §340B Participants whose purchases were sampled – more than 97
            percent – paid more than the ceiling price for the prescription drugs they purchased;

23

24      •   53 percent of the drugs sampled exceeded the ceiling price at least once; and

25      •   Overcharges were not limited to one or a few manufacturers, but occurred in the
            products of many manufacturers.

26

27      50.      The overcharges identified by the OIG's 2004 Report, calculated on an annualized

28  basis, are equal to nearly $500 million per year. The upper range estimate in the OIG's 2004 Report

<center>- 12 -</center>

1  indicates that overcharges may be as high as $259 million per month.  The OIG's 2004 Report

2  concluded that "[s]uch a significant overpayment [by §340B Participants] undermines the intent of

3  the 340B program.  The $41.1 million overcharged for this 1 month might instead be used to lower

4  the cost of acquiring outpatient drugs so that covered entities can serve more patients and improve

5  the quality of service."

6       51.    Also on June 29, 2004, the OIG issued a third report, entitled "Deficiencies in the

7  340B Drug Discount Program's Database."  OIG Report No. OEI-05-02-00071.  In that report, the

8  OIG found that the poor quality of OPA's drug price database prevents OPA from effectively

9  monitoring pharmaceutical product pricing and compliance with §340B requirements.

10      52.    In commenting on the database report, HRSA concurred with OIG's identification of

11  deficiencies in the §340B database, but said it would be impossible for HRSA to "commit to a

12  timetable" to correct the deficiencies because of "budgetary limitations."

13      53.    As alleged above, plaintiffs are informed and believe that neither OPA nor HRSA

14  has instituted that process because HRSA, nor any other entity, has the power to impose

15  consequences for violating the §340B Program.  Based on the OIG's report, HRSA's response,

16  OPA's lack of resources, and OPA's failure to exercise any dispute resolution process or

17  enforcement powers in the past, it is virtually certain that OPA will continue to take no action to

18  prevent future overcharges or recover for the §340B Participants for past ones.  Manufacturer Audit

19  Guidelines, 59 Fed. Reg. 30,022 (June 10, 1994).  OPA will not institute that process because

20  HRSA does not have authority to impose any consequences for violation of the §340B Program.

21      54.    Based on the facts found and reported in the OIG's report and such other evidence as

22  may be presented at trial, it is certain or virtually certain that plaintiff Santa Clara and the other

23  California Counties overpaid for drugs supplied by defendant manufacturers.

24      55.    Federal litigation against the pharmaceutical manufacturers is pending in the United

25  States District Court for the Middle District of Alabama, styled *Central Alabama Comprehensive*

26  *Healthcare, Inc. v. Aventis Pharmaceutical, Inc.*, Case No. 3:04-cv-00673-MHT-VPM (M.D. Ala.

27  July 13, 2004).  That action alleges that the drug manufacturers violated the express terms of §340B

28

- 13 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-29

1 and demands an accounting from every defendant to determine whether the prices that a plaintiff

2 paid for defendants' products exceeded the prices permitted under §340B and the PPA, and to what

3 extent.

4     56.    On October 21, 2004, the OIG issued a notice relating to the OIG's 2004 Report

5 disclosing enormous overcharges for a single, sampled month. On the day the notice was issued, in

6 a highly unusual move, it was presented to the federal court where federal §340B litigation is

7 pending in the Middle District of Alabama. The notice represented that the OIG's 2004 Report had

8 suddenly been "withdrawn," that the OIG was reanalyzing some of the data from the OIG's 2004

9 Report and that it would reissue the report with revisions (when and if it became necessary to do

10 so). Plaintiffs are informed and believe that the data that the OIG states it will reanalyze is not

11 material to the OIG's 2004 Report's essential conclusions. The notice stated that the data it was

12 reanalyzing was put at issue by *industry representatives* and only *potentially* created a discrepancy

13 in the data.    Plaintiffs are informed and believe that even if the data the drug industry

14 representatives have called into question is not accurate, any inaccuracy would not materially affect

15 the conclusions of the OIG's 2004 Report. Moreover, the October 21, 2004 notice withdrawing the

16 OIG's 2004 Report, itself, concluded that:

17          Despite our withdrawal of the Report because of problems with the
underlying data, we continue to believe that there are systemic issues that lead to
18 price discrepancies within the 340B Drug Pricing Program. *These newly-discovered
data problems do not affect the validity of three findings of the Report. First, we
19 found weaknesses in HRSA's oversight of the Program in that it has no process in
place to confirm that 340B entities receive the ceiling price. Second, we found that
20 participating entities cannot independently verify that they receive the 340B ceiling
price due to confidentiality provisions in the authorizing statute. Finally, we found
21 that pharmaceutical manufacturers' 340B ceiling price calculations are not
verified against the Department's calculations of the 340B ceiling price.* In fact,
22 pharmaceutical manufacturers are not required to and do not report their ceiling
prices to the Department. We appreciate HRSA's positive response to these previous
23 recommendations and anticipate it will continue to make progress in addressing these
issues.
24
25 Plaintiffs are informed and believe that the OIG's unprecedented action, delivering the October 21,
26 2004 notice immediately to the court upon its issuance which purported to "withdraw" the OIG's
27 2004 Report, was a result of pressure from the pharmaceutical industry. The October 21, 2004

28 <div align="center">- 14 -</div>

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-30

1  notice from the OIG delivered immediately to the court did not discuss or in anyway invalidate or

2  withdraw any other reports issued by the OIG, including the OIG's 2003 Report.

3           **CERTAIN DEFENDANTS' PUBLIC ADMISSION OF VIOLATIONS OF**
                               **§340B REQUIREMENTS**
4

5           57.    Under the Medicaid Drug Rebate Statute, drug manufacturers are required to report

6  their "best prices" to the federal government and to pay quarterly rebates to Medicaid to ensure that

7  the nation's insurance program for the indigent received the benefit of favorable drug prices offered

8  to other large purchasers of drugs.  As a participant in the Medicaid Rebate Program, Schering-

9  Plough was required to report its "best price" for and to pay rebates on Claritin® (loratadine).

10 Similarly, under the provisions of the PHS drug pricing programs, Schering-Plough was required to

11 charge the PHS entities such as AIDS drug programs and community health centers a discounted

12 price, based in part on the Medicaid price.  Schering-Plough did not report and change the best price

13 as required.  As a result, plaintiff Counties did not receive the appropriate §340B price.

14          58.    On June 20, 2003, AstraZeneca pled guilty and agreed to pay $355 million in fines

15 for violating the best price requirements with respect to the sale of Zoladex, a drug used to treat

16 prostate cancer.

17          59.    On October 28, 2002, Pfizer agreed to pay $9 million to settle allegations that it

18 violated the Medicaid Rebate Program.

19          60.    On October 3, 2001, TAP agreed to pay $875 million in fines, of which

20 $559,483,560 was attributed to violation of best price reporting.

21          61.    In each of the foregoing instances, plaintiffs purchased drugs from each of these

22 defendants, and as a result of best price violations, were not charged the correct §340B ceiling price.

23                            **CLASS ACTION ALLEGATIONS**

24          62.    The individual plaintiff Santa Clara brings this action on its own behalf and on

25 behalf of all other Counties similarly situated, pursuant to the provisions of Cal. Code Civ. Proc.

26 §382 and Cal. Civ. Code §1781.  The Class the plaintiffs seek to represent is defined as:

27          All California cities and counties who fund participants in the §340B Drug Discount
            Program under the Public Health Service Act of 1992, and were overcharged by the
28

                                              - 15 -
COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
    FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

defendants for drugs, both prescription and over-the-counter, that are used by §340B participants in the outpatient context.

63.     Numerosity of the Class: The Class is composed potentially of as many as 58 counties, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court. The identities of Class members are readily ascertainable.

64.     Existence and Predominance of Common Questions of Fact and Law: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(a)     Whether the ceiling price for drugs sold by defendants was the best price;

(b)     Whether plaintiffs are entitled to an accounting disclosure by defendants;

(c)     Whether defendants overcharged plaintiffs for drugs used in the outpatient context;

(d)     Whether plaintiffs and the Class members are entitled to restitution of all overcharged amounts acquired by defendants;

(e)     Whether plaintiffs and the Class members are entitled to disgorgement of all profits defendants have collected as a result of the overcharges;

(f)     Whether plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of defendants' conduct;

(g)     Whether plaintiffs and the Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit; and

(h)     Whether plaintiffs and the Class members are entitled to injunctive relief.

65.     Typicality: Plaintiffs are asserting claims that are typical of the Class, who were forced to bear overcharges by defendants, and have lost money as a result. Plaintiffs and all members of the Class have similarly suffered harm arising from defendants' violations of the law, as alleged herein.

- 16 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW, FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

1    66.    Adequacy:  Plaintiffs are adequate representatives of the Class because their interests

2  do not conflict with the interests of the Class members they seek to represent.  Plaintiffs will fairly

3  and adequately represent and protect the interests of the Class because they are not antagonistic to

4  the Class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of

5  class action litigation.

6    67.    Superiority:  A class action is superior to other available means for the fair and

7  efficient adjudication of plaintiffs' and Class members' claims.  Plaintiffs and members of the Class

8  have suffered irreparable harm as a result of defendants' unfair, unlawful, and unconscionable

9  conduct.  Absent this action, the Class members will continue to suffer losses, the violations of law

10  described herein will continue without remedy, and defendants will be permitted to retain the

11  proceeds of their misdeeds.   Defendants continue to engages in the unlawful, unfair, and

12  unconscionable conduct that is the subject of this Complaint.

13    **FIRST CAUSE OF ACTION**

14    **For Demand for an Accounting
     Disclosure from All Defendants**

15

16    68.    Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding

17  paragraphs as if they were fully set forth herein.

18    69.    Pursuant to §340B of the PHS Act and the PPA, each defendant was required by law,

19  and agreed, to act in good faith and ensure that the price paid for drugs by §340B Participants was

20  at or below the §340B ceiling price, regardless of whether the §340B Participants purchased

21  manufacturers' products through a wholesaler, or from a defendant directly.  Because defendants

22  refuse to disclose the actual §340B ceiling prices, and the cost data is in their exclusive possession,

23  plaintiffs were forced to repose a confidence in the defendants and rely and trust in the integrity of

24  the defendants to charge prices at or below the §340B ceiling prices.

25    70.    Plaintiffs are the intended beneficiaries of the protections established by §340B and

26  the intended third-party beneficiaries of the PPA.

27

28    - 17 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT. AND FOR UNJUST ENRICHMENT

71.   Plaintiffs are informed and believe that they were charged significantly more than the §340B ceiling price on a substantial number of prescription drugs purchased by participating §340B entities, including Valley Medical Center, its pharmacy, and other county pharmacies.

72.   As a result of their failure to ensure that the prices paid by plaintiffs and the Class members for defendants' products were at or below the §340B ceiling price, defendants have breached a fiduciary duty and taken unfair advantage of the confidence imposed on them by depriving plaintiffs and the Class members of the benefits they are entitled to under §340B and the PPA.

73.   Plaintiffs are without an administrative remedy and without effective administrative protection of their interests.

74.   Plaintiffs are entitled to an accounting disclosure from each defendant to determine whether the prices they paid for defendants' products exceeded the price permitted under §340B and the PPA, and to what extent.

### SECOND CAUSE OF ACTION

For Violation of Cal. Bus. & Prof. Code §§17200, *et seq.*,
the Unfair Competition Law, Against All Defendants

75.   Plaintiffs hereby incorporate the paragraphs and allegations set forth above, as though set forth in full herein.

76.   Pursuant to §340B of the PHS Act and the PPA, each defendant was required by federal law and agreed that the price paid for drugs by §340B Participants would be or was at or below the §340B ceiling price, regardless of whether the §340B Participants purchased manufacturers' products through a wholesaler or directly from a defendant.

77.   Plaintiffs are informed and believe and thereon allege that, as described herein, defendant pharmaceutical manufacturers have engaged in an unfair, unlawful, and deceptive scheme to collect inflated charges that exceed the §340B ceiling price from plaintiffs. Defendants unfairly, unlawfully and fraudulently charged §340B Participants funded by plaintiffs substantially more than

- 18 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW, FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

A-34

1   the §340B ceiling price on a significant number of prescription drugs purchased through their

2   participation in the §340B Program.

3       78.     Plaintiffs are informed and believe and thereon allege that, as described herein,

4   defendants' conduct constitutes unfair competition within the meaning of Cal. Bus. & Prof. Code

5   §§17200, *et seq.*, as it prohibits "any unlawful, unfair or fraudulent business act or practice" and

6   "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200.

7       79.     The UCL forbids all wrongful business activities in any context. Defendants'

8   practices are unlawful, deceptive, immoral, unethical, oppressive, and unscrupulous, and offend

9   established public policies, and have specifically resulted in injury to plaintiffs and the Class.

10  Plaintiffs and the §340B Participants for which they are financially responsible have paid more for

11  drugs, both prescription and over-the-counter, than they should have paid pursuant to the PPA. The

12  impact of defendants' practices is in no way mitigated by any justifications, reasons or motives.

13  Defendants' conduct has no utility when compared to the harm done to plaintiffs.

14      80.     As a result of the aforementioned conduct in violation of the UCL, plaintiffs are

15  entitled to equitable relief, including restitution of all charges and disgorgement of profits,

16  attorneys' fees and costs, and permanent injunctive relief to prevent such conduct in the future.

17                          **THIRD CAUSE OF ACTION**

18                  **For Violation of California False Claims Act,**
                **Cal. Gov't Code §§12650, *et seq.*, Against All Defendants**
19

20      81.     Plaintiffs hereby incorporate the paragraphs and allegations set forth above, as

21  though set forth in full herein.

22      82.     Plaintiffs are informed and believe, and based thereon allege that defendants and

23  each of them have violated the California False Claims Act, Cal. Gov't Code §12651, by:

24          (a)     Knowingly presenting or causing to be presented to an officer or employee of

25  plaintiffs false claims for payment for prescription and over-the-counter outpatient drugs in the

26  outpatient context (§12651(a)(1));

27

28

                                    - 19 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR UNJUST ENRICHMENT

1       (b)    Knowingly making, using, or causing to be made a false record or statement

2 to get a false claim paid and/or approved by the plaintiff Counties (§12651(a)(2));

3       (c)    Knowingly making, using, or causing to be made or used a false record or

4 statement to conceal, avoid, or decrease an obligation to pay money to plaintiffs (§12651(a)(7));

5 and/or

6       (d)    Benefiting from the inadvertent submission of a false claim to plaintiffs,

7 subsequently discovering the falsity of the claim and failing to disclose the false claim to plaintiffs

8 within a reasonable time after discovery of the false claim (§12651(a)(8)).

9    83.    As a result of the foregoing violations of the California False Claims Act, plaintiffs

10 are entitled to not less than two times, but not more than three times, the amount of damages

11 sustained by each of them, in addition to reasonable costs and attorneys' fees, in addition to any

12 other remedy the Court may deem appropriate.

13

### FOURTH CAUSE OF ACTION

14
15
#### For Unjust Enrichment Against All Defendants

16    84.    Plaintiffs hereby repeat, reallege, and incorporate by reference the preceding

17 paragraphs as if they were fully set forth herein.

18    85.    Defendants agreed to supply drugs to plaintiffs at prices no greater than the §340B

19 ceiling price.   Defendants failed and refused to comply with that agreement, and as a result,

20 defendants have retained monies to which they are not entitled and that belong to plaintiffs.

21    86.    Plaintiffs have suffered harm as a proximate result of the violations of law and

22 wrongful conduct of defendants as alleged herein.

23    87.    If defendants are permitted to keep monies collected by their unlawful overcharging

24 to §340B Participants, they will be unjustly enriched at the expense of plaintiffs.

25
#### PRAYER FOR RELIEF

26    WHEREFORE, plaintiff Santa Clara and Counties of California pray for judgment as

27 follows:

28

- 20 -

COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
FOR VIOLATION OF CAL FALSE CLAIMS ACT AND FOR UNJUST ENRICHMENT

1    A.    Requiring defendants to immediately cease their unlawful acts and practices;

2    B.    Requiring defendants to make full restitution of all monies wrongfully obtained;

3    C.    Requiring defendants to disgorge all ill-gotten revenues and/or profits;

4    D.    An order certifying the Class and appointing the plaintiffs and their undersigned

5    counsel of record to represent the Class, with respect to the first, second and fourth causes of action

6    set forth herein;

7    E.    Requiring defendants to provide an accounting of the §340B ceiling prices for all

8    products in all package sizes for all months or quarters in which the plaintiff Santa Clara and

9    Counties purchased such products through their §340B Participants;

10   F.    Granting appropriate injunctive relief pursuant to all causes of action to prevent the

11   practices alleged herein from continuing;

12   G.    Awarding the plaintiff Santa Clara not less than two, but not more than three, times

13   the amount of damages sustained by each of them;

14   H.    Imposing a constructive trust and ordering defendants to pay restitution to plaintiffs

15   and the Class members in the amount they have been overcharged for drugs they purchased for

16   §340B Participants from defendants, with interest;

17   I.    Awarding plaintiffs the fees and expenses incurred in this action, including

18   reasonable allowance of fees for plaintiffs' attorneys and experts; and

19   J.    Granting plaintiffs such other and further relief as the Court may deem just and

20   proper.

21                               **JURY DEMAND**

22   Plaintiffs hereby demand a trial by jury of all issues so triable.

23   DATED: August 16, 2005              LERACH COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
24                                       PATRICK J. COUGHLIN
                                         JACQUELINE E. MOTTEK
25                                       AELISH M. BAIG
                                         JENNIE LEE ANDERSON
26

27                                       _Jacqueline Mottek_
                                         ─────────────────────────────
28                                            JACQUELINE E. MOTTEK
                                         - 21 -
     COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL.UNFAIR COMPETITION LAW,
        FOR VIOLATION OF CAL. FALSE CLAIMS ACT, AND/FOR UNJUST ENRICHMENT

1
2       100 Pine Street, Suite 2600
        San Francisco, CA 94111
3       Telephone: 415/288-4545
        415/288-4534 (fax)
4
        HAGENS BERMAN LLP
5       STEVE W. BERMAN
        1301 FIFTH AVENUE, SUITE 2900
6       Seattle, WA 98101
        Telephone: 206/623-7292
7       206/623-0594 (fax)
8       OFFICE OF SANTA CLARA COUNTY COUNSEL
        ANN MILLER RAVEL
9       70 West Heading Street
        9th Floor East Wing
10      San Jose, CA 95110
        Telephone: 408/299-5900
11      408/292-7240 (fax)
12  T:\Cpt\Draft\Consumer\340B\BAYER CORP.doc
            Attorneys for Plaintiff the County of Santa Clara
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                        - 22 -
COMPLAINT FOR ACCOUNTING DISCLOSURE, FOR VIOLATION OF CAL UNFAIR COMPETITION LAW,
    FOR VIOLATION OF CAL FALSE CLAIMS ACT, AND FOR INJUN...