IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SANTA CLARA, on behalf of itself and all others similarly situated,<br><br>  Plaintiff,<br><br> v.<br><br>ASTRA UNITED STATES, INC.; ASTRAZENECA PHARMACEUTICALS LP; AVENTIS PHARMACEUTICALS, INC.; BAYER CORP.; BRISTOL-MYERS SQUIBB CO.; PFIZER, INC.; SCHERING-PLOUGH CORP.; SMITHKLINE BEECHAM CORP., D/B/A GLAXOSMITHKLINE; TAP PHARMACEUTICAL PRODUCTS, INC.; WYETH, INC.; WYETH PHARMACEUTICALS, INC.; ZENECA, INC.; ZLB BEHRING LLC; CARDINAL HEALTH, INC.; HEALTHCARE PURCHASING PARTNERS INTERNATIONAL, LLC; MCKESSON CORP.; AMERISOURCEBERGEN CORP., and DOES 1 through 100, inclusive,<br><br>  Defendants. | No. C 05-03740 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

**INTRODUCTION**

In this putative class action, a county government seeks to recover alleged overcharges for medicines sold by pharmaceutical companies to public hospitals in California. The action is brought under Section 17204 of California's Unfair Competition Law ("UCL") and under California's False Claims Act ("CFCA"), among other theories. Having successfully removed the action from state court, defendants now move to dismiss. The grounds for the motion are

that plaintiff lacks standing, that plaintiff's state-law claims are preempted by federal law, that primary jurisdiction rests with the Department of Health and Human Services and its Office of Inspector General, that plaintiff has failed to meet the pleading requirements of FRCP 8 and 9(b), and that plaintiff is not the real party in interest. Defendant SmithKline Beecham has filed a supplemental motion to dismiss on grounds that all four of plaintiff's claims are time-barred.

For reasons explained below, this order holds that plaintiff has no standing to bring suit under the "any person" provision of the UCL. The UCL claim, as pled, must be **DISMISSED**. Plaintiff's CFCA claim is **DISMISSED** for failure to meet FRCP 9(b)'s pleading requirements for fraud.

**STATEMENT**

Defendants are drug manufacturers and distributors. They sell pharmaceuticals to public hospitals and health-care clinics. As required by state law, Santa Clara County pays the cost of drugs for many indigent and other patients at such medical facilities. In 2004, the county spent more than $30 million on prescription and over-the-counter medications for outpatients.

The Public Health Service Act of 1992 established a drug discount program called the Section 340B program. 42 U.S.C. 256b. The 340B program requires pharmaceutical manufacturers to provide a statutorily defined discount on outpatient drugs to qualified entities. Manufacturers are required to participate in the 340B program as a condition of having their drug charges reimbursed by Medicaid. Manufacturers must enter into a Pharmaceutical Pricing Agreement with the Department of Health and Human Services. The 340B program is overseen by the Health Resources and Services Administration ("HRSA"), an agency within the department. Immediate responsibility for oversight of the 340B program resides in HRSA's Office of Pharmacy Affairs.

This lawsuit was evidently provoked by a series of federal reports raising a concern about overcharges. More specifically, in March 2003, the Office of Inspector General of the Department of Health and Human Services issued a report entitled "Pharmaceutical Manufacturers Overcharged 340B-Covered Entities." The report stated that five pharmaceutical manufacturers had overcharged 340B entities during the one-year period ending September 30,

2

1999. The OIG issued another report in June 2004 entitled "Appropriateness of 340B Drug Prices." It examined the prices paid by 340B entities in September 2002. It found that 340B entities overpaid and did not receive the correct discount for 31 percent of sampled drug purchases. The report estimated that 340B entities overpaid $41.1 million for the sample month. No specific manufacturers, 340B entities or drug prices were identified in the report. On October 21, 2004, the OIG withdrew the June 2004 report. The OIG stated that it had found problems with the data used to support the finding that the sampled prices exceeded the 340B ceiling price. The OIG expects to release a new report in spring 2006 to determine whether 340B entities paid the appropriate price.

Santa Clara County sued defendants in Alameda County Superior Court, claiming they had overcharged for drugs. Santa Clara asserted four claims on behalf of itself and other similarly situated California counties: violations of Section 17200 of California's Unfair Competition Law and California's False Claims Act, for an accounting and for unjust enrichment. Defendants removed the action here claiming diversity and federal-question jurisdiction. Santa Clara's motion for remand was denied on the basis of federal-question subject-matter jurisdiction.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). On the other hand, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (quoting Rule 8(a)(2)). Allegations of fraud, however, must meet the heightened pleading standards of FRCP 9(b). These require allegations

3

of particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 n.7 (9th Cir. 1994) (en banc).

### 1. THE SECTION 17200 CLAIM.

California Business and Professions Code Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." The California Supreme Court has stated that "[t]he Legislature intended this sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 560 (1998) (citations omitted). Among others, Section 17204 authorizes "any person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition" to sue under Section 17200. Section 17201 defines "person" to "mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."

Section 17204 also authorizes counties to sue, but only where "county counsel [is] authorized by agreement with the district attorney in actions involving violation of a county ordinance . . . ." Plaintiff has not proceeded under that authority. Rather plaintiff seeks to proceed under the provision allowing suit by "any *person* who has suffered injury in fact and has lost money or property . . . as a result of unfair competition" (emphasis added). Defendants contend that the "any person" provision is inapplicable to counties. This order agrees.

The legislative history of Section 17204 helps explain why counties, on their own, do not have standing to sue under the "any person" provision of the UCL. The basic point is that the legislature studiously omitted counties from the definition of "person" so that they could neither be sued nor sue. In 1977, the California legislature recodified Civil Code Sections 3369 and 3370 as Business and Professions Code Section 17200 *et seq*. Section 17204, in 1977, provided:

> Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or any city attorney of a city having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any

> city or city and county having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public.

In 1991, Section 17204 was amended.  In the run-up to the amendment, the County of San Bernardino wished "to be able to bring action under the unfair competition laws . . . ." Assemb. Judiciary Comm., 3d reading analysis of S.B. No. 709 (1991–1992 Reg. Sess.), as amended July 8, 1991.  The California District Attorneys Association disagreed, stating:

> we see no compelling reason to grant [County of San Bernardino] authority to bring enforcement actions for unfair competition . . . . We believe it would be a mistake to expand Business and Professions Code Section 17200 by allowing other agencies to file these actions.  This area is a rather specialized one which requires a certain amount of expertise to ensure that these statutes are judiciously used.

*Ibid.*

The Association had objections over possible conflicts of interest, competition between district attorneys and county counsels, and duplication of efforts.  It seems clear that the Association's objections carried the day, for the statutory change that followed was limited as indicated in the italicized passage:

> Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or any *county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance*, . . . or by any person acting for the interests of itself, its members or the general public.  (emphasis added).

The amended Section 17204 thus required counties to proceed on a Section 17200 claim, if at all, only according to the provisions listed in Section 17204.  The absence of counties in the definition of "person" in Section 17201 was purposeful.

Subsequent amendments to Section 17204 did not change this result.  Contrary to plaintiff, the language added by Proposition 64 in 2004 was to ensure that only certain public officials be authorized to file actions on behalf of the general public.  There was no intent to change the standing of counties.  Instead, the intent was that "the Attorney General, district attorneys, county counsels, and city attorneys *maintain* their public protection authority and

5

capability under the unfair competition laws." *City of S.F. v. PG & E Corp.*, 433 F.3d 1115, 1127 (9th Cir. 2006) (citations omitted) (emphasis added).

California caselaw is in accord. Most directly on point is *Santa Monica Rent Control Board v. Bluvshtein*, 230 Cal. App. 3d 308 (Cal. Ct. App. 1991). In *Bluvshtein*, the state court of appeal affirmed dismissal of a UCL claim brought by a governmental agency. The rent control board, created by the city's charter, sued owners of a residential building for allegedly violating laws regarding re-rental of withdrawn rental property. The rent control board brought suit as a "person" under the UCL.[1] *Bluvshtein* held that the plaintiff:

> is a government agency; it is none of the things included in the definition of person. Therefore, it has no standing to bring an action for an injunction pursuant to the [UCL].

*Id.* at 318.

To be sure, decisions of intermediate state appellate courts are not binding on federal courts. When the state's highest court has not yet ruled, as here, state appellate court decisions are "persuasive" unless the federal court finds the state's highest court would decide otherwise. *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000). This order finds *Bluvshtein* persuasive and expects the California Supreme Court would rule similarly.

Also close on point is *San Francisco Bay Area Rapid Transit District v. Spencer*, a decision by Judge Susan Illston of this district, holding that BART did "not qualify as a 'person' under section 17201, and [was] therefore not authorized [to bring] suit under section 17204." No. 04-04632, 2005 WL 2171906, at *7 (N.D. Cal. Sep. 6, 2005).

In other decisions, a UCL claim was brought *against* the governmental agency. Again, California courts have uniformly found that governmental agencies were not within the above definition of "person" in Section 17201, which governs for both purposes. *See e.g. Cmty. Mem'l Hosp. of San Buena Ventura v. County of Ventura*, 50 Cal. App. 4th 199, 209 (Cal. Ct. App. 1996) (finding that the absence of "county" in Section 17201 "is a strong indication that the Legislature did not intend counties to be subject to the [UCL]"); *People for the Ethical*

---

[1] *Bluvshtein* erroneously referred to California Business and Professions Code Sections 17201 and 17204 as the Unfair Practices Act, instead of the Unfair Competition Law.

6

*Treatment of Animals, Inc. v. Cal. Milk Producers Advisory Bd.*, 125 Cal. App. 4th 871, 879 (Cal. Ct. App. 2005) (finding that "had the Legislature wished to include governmental entities . . . in its definition of 'person[s]' subject to UCL liability it would have done so by using language similar to that in [the Unfair Practices Act ("UPA"), which includes 'municipal or other public corporation' in its definition of 'person']").[2]

The one possible exception is *Notrica v. State Compensation Insurance Fund*, 70 Cal. App. 4th 911 (Cal. Ct. App. 1999). There, the state court of appeal rejected the State Compensation Insurance Fund's ("SCIF") argument that as a public entity, it was not a "person" subject to suit under the UCL. That decision is distinguishable. *Notrica* was based upon the specific statutory provisions that governed SCIF's existence. California Insurance Code Section 11783 provided that SCIF may "[s]ue and be sued in all actions arising out of any act or omission in connection with its business or affairs." *See also Spencer*, 2005 WL at *7 (similarly distinguishing *Notrica*).

Plaintiff argues that *Bluvshtein* and *Spencer* were wrongly decided. It claims that the decisions barring UCL suits against government entities were actually animated by sovereign immunity. According to plaintiff, the doctrine of sovereign immunity allows the county to have it both ways — to be a "person" when suing, but not a "person" when defending.

Plaintiff relies on *Community Memorial Hospital of San Buena Ventura v. County of Ventura*, 50 Cal. App. 4th 199 (Cal. Ct. App. 1996) to support this position. In *Ventura*, a private hospital sued Ventura County claiming a UCL violation. Ventura County owned a public hospital which, according to the complaint, was unfairly competing with private hospitals. *Ventura* initially posed the issue as one of statutory construction, *i.e.*, "whether the County is a person within the meaning of the . . . unfair competition statute." *Ventura* stated that because Section 17201 does not "expressly include counties [it is] a strong indication that the Legislature did not intend counties to be subject to the statutes in question." *Id.* at 209. *Ventura* ventured on

---

[2] In contrast to the sweeping language of the UCL, "[t]he Unfair Practices Act [(Business and Professions Code Section 17000 *et seq*.)] chiefly prohibits selling articles *below cost*, or giving them away, for the purpose of injuring competitors and destroying competition, except in such cases as 'seasonal clearances' . . . ." 1 B.E. Witkin, *Summary of California Law* § 609 (10th ed. 2005).

7

1   to say that allowing the plaintiff to proceed on its UCL claim would infringe the sovereign

2   powers of the county in its role as a protector of public health.

3   *Ventura*'s alternative ground based on sovereign immunity has been criticized. *See, e.g.,*

4   *People for the Ethical Treatment of Animals*, 125 Cal. App. 4th at 883 n.11 (stating, "[u]sing an

5   'infringement of sovereign power' analysis, as did the [*Ventura*] court, to interpret the scope of a

6   statutory definition is untethered to any canons of statutory construction . . . . [T]he issue is

7   easily resolved by examining the 'plain meaning' of the statute, a path from which the [*Ventura*]

8   court inexplicably departed in its opinion."). Moreover, the California Supreme Court has

9   instructed that "[i]f the plain language of the statute is clear and unambiguous, our inquiry ends,

10  and we need not embark on judicial construction." *People v. Johnson*, 28 Cal. 4th 240, 244

11  (2002) (citations omitted). Plaintiff's sovereign power argument ignores this directive. It also

12  would introduce an anomaly. *See e.g. People for the Ethical Treatment of Animals*, 125 Cal.

13  App. 4th at 883 n.11 ("[I]t is difficult to imagine a scenario whereby in one context, a

14  governmental body could be considered a 'person' as defined by Section 17201, while in another

15  context, it is not.").

16  Plaintiff argues that it is asserting a UCL claim, not in a representative capacity but for its

17  own loss, as a county that "has lost money as a result of the defendants' overcharges . . ."

18  (Opp. 17). Again, however, Section 17201 does not contain "county" within its definition of

19  "person." To be sure, there is a gap in Section 17204's coverage — a county can be a victim of

20  fraud and still not be able to sue under the "any person" proviso. Yet this appears to be a

21  tradeoff for the exemption from suit built into the same definition. Plaintiff's argument to have it

22  both ways is the classic instance of one that must be directed to the legislature rather than the

23  courts.

24  Invoking other statutory schemes, plaintiff cites decisions where a public agency, despite

25  not being named as a person who could sue, nonetheless was found to have standing. *See, e.g.,*

26  *People v. Centr-O-Mart*, 34 Cal. 2d 702, 703 (1950) (state had the power to sue under the

27  Unfair Practices Act despite not being expressly included within the list of those who may bring

28  actions under the Unfair Practices Act); *Pac. Gas & Elec. Co. v. County of Stanislaus*, 16 Cal.

8

1  4th 1143, 1145 (1997) (county had power to sue under Cartwright Act despite not being named);
2  *FTC v. MTK Marketing, Inc.*, 149 F.3d 1036, 1038 (9th Cir. 1998) (agreeing with FTC's
3  argument that, "the definition of 'person' should be read expansively, thereby conferring
4  standing upon the FTC to enforce liability" under California's Telephone Sellers Act).

5  The cited decisions, however, involved statutes other than the UCL. In *Centr-O-Mart*,
6  suit was brought under the UPA. *Centr-O-Mart* noted that Section 17021 — which defines
7  "person" for the Unfair Practices Act — states that "person includes any person, firm,
8  association, organization, partnership, business trust, company, corporation or *municipal or*
9  *other public corporation*" (emphasis added). By sharp contrast, Section 17201 of the
10 Unfair Competition Law — which was not involved in *Centr-O-Mart* — states that "the term
11 person shall mean and include natural persons, corporations, firms, partnerships, joint stock
12 companies, associations and other organizations of persons." There is no reference in
13 Section 17201 to governmental agencies or political entities. In *Pacific Gas & Electric Co.*, suit
14 was brought under the Cartwright Act. Likewise, *MTK Marketing, Inc.*, involved California's
15 Telephone Sellers Act. Furthermore, in each of the cited decisions, the courts arrived at their
16 holdings only after embarking on a review of the applicable legislative histories and finding no
17 restrictions on the abilities of public entities to bring suit. In contrast, here, the 1991 amendment
18 to Section 17204 shows a clear legislative intent to restrict a county's authority to bring a
19 UCL claim on its own.

20 In short, this order concludes, as did *Bluvshtein*, the most authoritative and persuasive
21 statement of law in California, that a county is not within the "any person" provision of Section
22 17204. This order, therefore, must dismiss plaintiff's UCL claim for lack of standing.

23     **2.     THE CFCA CLAIM.**

24 Plaintiff concedes that its CFCA claim is a fraud-based claim (Opp. 14). Under
25 FRCP 9(b), fraud-based claims must be pled with particularity. Thus, "the pleader must state the
26 time, place, and specific content of the false representations as well as the identities of the parties
27 to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,
28 1401 (9th Cir. 1986). Also, the circumstances constituting the alleged fraud must be specific

9

enough to give defendants notice of the particular misconduct so that they can defend against the charge. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations of fraud based on information and belief do not satisfy FRCP 9(b) requirements. Mere conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The claim falls short. It merely alleges that plaintiff was "informed and believe[s]" that defendants knowingly submitted false claims for drug payments (First Amd. Compl. ¶ 90). Allegations of fraud based on information and belief do not satisfy the particularity requirement unless accompanied by a statement of the specific facts on which the belief is founded. *Moore*, 885 F.2d at 540. FRCP 9(b) requirements may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession. *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). Given, however, that plaintiff directly funded its 340B entities, plaintiff cannot fairly allege that defendants are in sole possession of the facts that would support a CFCA claim. Plaintiff's failure to allege with any specificity if — or when — any actual improper claims were submitted is fatal. Plaintiff does not specify the drugs alleged to have been overpriced, the manufacturers who sold the drugs to the 340B entities or the prices charged. Plaintiff should have investigated the matter by, for example, reviewing the drug purchases of its 340B entities and alleged those facts in the complaint. Accordingly, plaintiff's CFCA claim is dismissed on the grounds that it does not comply with FRCP 9(b).

### 3.  THE OTHER CLAIMS.

"A right to an accounting is derivative; it must be based on other claims." *Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833 (Cal. Ct. App. 1998); *see also Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) (as amended) ("The remedy they seek is a declaration that they are co-owners, and none of the subsidiary remedies, for an accounting and so forth, are independent of that remedy."). Consequently, there is no predicate to support a request for an accounting, given that the substantive claims have been dismissed.

As for unjust enrichment, no decisions have been cited involving our unusual fact pattern. In the absence of California authority on point, this order declines to extend the theory of unjust enrichment to the scenario alleged in the complaint.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. It is unnecessary to reach the multitude of further defense arguments at this time. Leave to amend is granted. Any amended complaint must be filed and served within fourteen calendar days. Any motion to dismiss must be filed within fourteen calendar days thereafter, to be heard on a 35-day track. Please do not ask for extensions.

**IT IS SO ORDERED.**

Dated: February 14, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE