IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SANTA CLARA, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASTRA USA, INC.; ASTRAZENECA PHARMACEUTICALS LP; AVENTIS PHARMACEUTICALS, INC.; BAYER CORP.; BRISTOL-MYERS SQUIBB CO.; PFIZER, INC.; SCHERING-PLOUGH CORP.; SMITHKLINE BEECHAM CORP.; TAP PHARMACEUTICAL PRODUCTS, INC.; WYETH, INC.; WYETH PHARMACEUTICALS, INC.; ZENECA, INC.; ZLB BEHRING LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. C 05-03740 WHA<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |

**INTRODUCTION**

In this action alleging overpricing of medicine, plaintiff County of Santa Clara moves for leave to file a third amended complaint. Further amendment would be futile. The motion therefore is **DENIED**.

**STATEMENT**

The Public Health Service Act of 1992 established a drug discount program called the Section 340B program. 42 U.S.C. 256b. The 340B program requires participating pharmaceutical manufacturers to provide statutorily defined discounts on outpatient drugs to

qualified hospitals and clinics. Manufacturers are required to participate in the 340B program as a condition of having drug charges reimbursed by Medicaid. Plaintiff alleges that defendants did not provide the required discounts.

Plaintiff has filed three complaints in the instant action. Plaintiff moved to amend the first complaint. That motion was granted. The first amended complaint brought claims under the California Unfair Competition Law and the California False Claims Act, for an accounting and for unjust enrichment. It was dismissed for failure to plead fraud-based violations of the False Claims Act with particularity, for lack of standing to sue under the Unfair Competition Law and for failure to state claims for an accounting or for unjust enrichment. Plaintiff was granted leave to amend. It filed the second amended complaint. That iteration repeated the accusations under the Unfair Competition Law and False Claims Act and for an accounting. It added claims for breach of contract, for breach of the covenant of good faith and fair dealing, for negligence and in quantum meruit. That complaint also was fatally deficient. On the claims repeated from the first amended complaint, the court held that the same deficiencies remained. It held that the complaint failed to state a claim on the other allegations.

Despite the two dismissals and the two previous orders granting leave to amend, the Court believed there was a sliver of possibility that plaintiff could make an adequate pleading, at least under the False Claims Act. Plaintiff therefore was allowed to move for permission to file a third amended complaint. Plaintiff took the Court's invitation and moved for permission to file another complaint. A proposed third amended complaint was filed with the motion (Mottek Decl., ¶ 2, Exh. 1).

**ANALYSIS**

Leave to amend "shall be freely given when justice so requires." FRCP 15(a). Leave need not be freely granted if there were "repeated failure[s] to cure deficiencies by amendments previously allowed" or if amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment;

1  and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*,
2  911 F.2d 367, 373 (9th Cir 1990).

3  This order's findings on the fourth factor — futility of amendment — are determinative.

4  **1.   FALSE CLAIMS ACT.**

5  Plaintiff acknowledges that the False Claims Act allegation in the proposed third
6  amended complaint sounds in fraud by stating "The Amendment Includes Additional Facts that
7  Are the Basis for Plaintiffs' Belief that Defendants Engaged in a Fraudulent Scheme . . . (Br. 5).
8  The "circumstances constituting fraud" must therefore be "stated with particularity." FRCP
9  9(b).

10 The second amended complaint was dismissed, in part, because the False Claims Act
11 allegations were not accompanied by a statement of the facts from which a reasonable inference
12 of fraud could be drawn. *See Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir.
13 1987) (requiring, in fraud actions, statement of facts on which inference of fraud rests). The
14 claim therefore did not meet the requirements of Rule 9(b).

15 The proposed third amended complaint provides the following new allegations in an
16 attempt to make the accusation of fraud sufficiently specific:

17  •   The proposed complaint references an attachment, Exhibit B, which includes
18      various data related to the drugs plaintiff purchased (Proposed Compl. ¶ 43, Exh.
19      B).

20  •   The proposed complaint references an attachment, Exhibit C, which consists of
21      two discs including "all the invoices for all plaintiffs' purchases from all
22      defendants from 2001 through 2005." Each invoice supposedly identifies the
23      specific county-funded §340B entity for which the drug was purchased (*ibid.*,
24      Exh. C).

25  •   Attached to the proposed complaint are several reports on the 340B program that
26      were issued by the Office of Inspector General (OIG) for the Department of
27      Health and Human Services (*id.* ¶ 4, Exh. E).

28

3

- The proposed complaint states that "[a]ccording to the Public Hospital Pharmacy Coalition, and a January 1, 2006 American Society of Health-System Pharmacists report[,]" defendants Aventis Pharmaceuticals, Bristol-Myers Squibb, TAP Pharmaceutical Products, and SmithKline Beecham, are the manufacturers named in a 2003 report by the Office of Inspector General as having overcharged 340B entities. The proposed complaint also would claim that Senator Charles E. Grassley and the report by the American Society of Health-System Pharmacists dated January 1, 2006, noted that the Department of Health and Human Services "has been unsuccessful in recovering [these] overcharges," as well as others reported by the Office of Inspector General in 2004 (*id.* ¶¶ 18, 21–22, 25, 56; Exh. E (2003 report) and Exh. F (Grassley letter)). The report by the American Society of Health-System Pharmacists was not attached.

- The proposed complaint attaches the letter from Senator Grassley to the administrator of the Health Resources and Services Administration (HRSA), an agency within the Department of Health and Human Services. Senator Grassley wrote that:

  > "[i]n response to my letter, you stated that HRSA was sending letters to four drug companies — Aventis, Bristol-Myers Squibb, GSK [a fictitious business name for defendant SmithKline Beecham] and TAP Pharmaceuticals — requesting that each develop "corrective action plans" for refunding or crediting the entities affected by the overcharges. It is my understanding that, with the exception of GSK's product Flonase, these companies have not issued refunds to 340B providers or indicated to HRSA that they intend to do so. Likewise, I understand that these companies have not followed through on HRSA's request to determine whether they overcharged 340B entities for other products

  (*id.*, Exh. F (Letter from Sen. Grassley to Elizabeth M. Duke (Sept. 1, 2005))).

- The complaint alleges that the information used to derive the price limits on pharmaceuticals includes "manufacturers' calculations of AMP and 'best' prices" (*id.* ¶ 44).

4

1       These additions — individually or collectively — would not add enough to the False
2  Claims allegations to enable them to withstand a Rule 9(b) challenge.  Allowing the amendment
3  therefore would be futile.  Plaintiffs propose to beef up the allegations supporting their
4  contention that defendants Aventis Pharmaceuticals, Bristol-Myers Squibb, TAP
5  Pharmaceutical Products and SmithKline Beecham are the companies identified as
6  overcharging 340B entities in the 2003 OIG report.  The 2003 report, however, covered sales
7  during a one-year period ending September 30, 1999 (*id.*, Exh. E (2003 OIG Report at 1)).
8  Plaintiff did not begin participating in the 340B program until 2001.  It therefore cannot plead
9  any violation resulting from the overcharges in 1998 and 1999.  Plaintiff claims that the new
10 allegations about the 2003 report "explain the factual basis for the plaintiffs' belief that
11 defendants were engaged in an ongoing and continuing fraudulent scheme resulting in
12 overcharges to the 340B entities" (Br. 6).  There is nothing in the complaint or briefs, however,
13 to suggest a factual basis for believing that the overcharges alleged by the OIG for 1998 and
14 1999 continued until 2001.  Plaintiff does not even cite to any part of the complaint that
15 supports this argument.

16      The purchasing records referenced in the complaint do not help plaintiff.  These mere
17 records of purchases, although detailed, in no way suggest that the amounts charged were
18 improper.

19      The attachment of the OIG reports adds nothing because those documents were
20 incorporated by reference in the prior complaint and were available for review then.  The
21 allegation that the information used to derive price limits includes "manufacturers' calculations
22 of AMP and 'best' prices," is not a factual allegation.  It is a matter of law: the formula to
23 calculate prices using average manufacturer's price (AMP) and best price is set forth at 42
24 U.S.C. 256b(a)(2) and 42 U.S.C. 1396r-8(c)(1)(A)(ii)(I).

25      Just before the hearing, defendants Aventis Pharmaceuticals and ZLB Behring filed with
26 the Court an OIG report issued in July.  The OIG estimated that, for June 2005, the prices for 14
27 percent of all purchases made by 340B entities nationwide exceeded the ceiling prices.  The
28 total amount of estimated overcharges was $3.9 million, slightly less than 1 percent of total

5

340B spending (Statement of Recent OIG Report (OIG, Dep't of Health & Human Srvs., No. OEI-05-02-00073, Review of 340B Prices at I, 11, 36–37 (2005))). At the hearing, both sides sought support from this document. Defendants had the better argument. The report does not support an inference of fraud. The OIG did not even speculate as to the cause of the overcharges, much less claim that they were caused by fraud. The OIG also did not name any manufacturers so none of defendants were implicated explicitly. The report therefore does not support an inference of fraud on the part of defendants against plaintiff.

### 2. UNFAIR COMPETITION LAW.

In the proposed third amended complaint, plaintiff does nothing to strengthen its allegations that defendants violated California Business and Professions Code 17200, the Unfair Competition Law. As in the prior complaints, plaintiff is a county government. As stated in the previous orders, counties do not have standing to sue for violations of the Unfair Competition Law, except in narrow circumstances not alleged to be present in this action. Plaintiff tries, as it did in the most recent complaint, to dodge this barrier by suggesting, in ambiguous language, that certain subunits of the county may be plaintiffs in this action. Even if they were, those entities are controlled and owned by the county and they have no capacity to sue on their own. They therefore cannot bring Section 17200 claims, as held by the order dismissing the second amended complaint. Plaintiff suggests it has improved the complaint by making clear that it seeks to bring suit for its own losses, not those of the general public. This distinction, however, does not give the county standing. Plaintiff also tries to re-argue the merits of whether it has standing to sue. It offers no new arguments. The previous order stands. Allowing plaintiff to reapplied its unfair-competition claim would be futile.

### 3. CONTRACT CLAIM.

Plaintiff does two things to try to improve its contract and covenant-of good-faith claims. *First*, *it* quotes passages of the Pharmaceutical Pricing Agreements between the Secretary of the Department of Health and Human Services and each defendant, the contracts on which it claims a right to sue. *Second*, it adds legal argument about why this language should give plaintiff the right to sue on the contract (Proposed Comal. ¶¶ 99–101, 103). This

6

1 adds no new facts, since a standard Pharmaceutical Pricing Agreement was incorporated by
2 reference in the last complaint. In effect, plaintiff is asking the Court to reconsider its previous
3 ruling. Plaintiff has not, however, carried its burden to win leave to file a motion for
4 reconsideration.[*] Even considering the merits of plaintiff's new arguments, they suggest that
5 amendment would be futile. Plaintiff claims that the Court erred by ruling that a third party can
6 only sue on a contract if the signatories "intended it to have the right to sue for performance"
7 (Order Dismissing Second Amended Comal. 11). Plaintiff claims that all that is required is that
8 the signatories intended to benefit the third-party directly, and that there is no requirement the
9 signatories intended to give the third-party a right to sue (Br. 3–4). As before, this argument is
10 incorrect. "Parties that benefit from a government contract . . . may not *enforce* the contract
11 absent a clear intent to the contrary." *Klammath Water Users Protective Assen v. Patterson*,
12 204 F.3d 1206, 1211 (9th Cir. 1999) (emphasis added) (internal quotations and citations
13 omitted). In other words, a beneficiary does not have standing to sue on the contract unless the
14 signatories clearly intended it to have the right to enforce the agreement. Plaintiff's further
15 arguments were addressed in detail in the order dismissing the second amended complaint.
16 Further amendment of the contract claims would be futile.

17     **4.**    **NEGLIGENCE.**

18 Plaintiff's proposed complaint clarifies that the source of the duty allegedly breached
19 was a combination of 42 U.S.C. 256b and defendants' participation in the 340B program
20 (Proposed Comal. ¶ 94). The order dismissing the second amended complaint found that
21 defendants had no duty under the statute, the Pharmaceutical Pricing Agreements or a supposed
22 "special relationship" between defendants and 340B entities. In now claiming that the duty
23 alleges from a combination of the statute and defendants' participation in the program is simply

---

[*] A motion for leave to file a motion for reconsideration "must specifically show: (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law occurring after the time of such order; or (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civil L.R. 7-9(b).

another way of stating that the duty arose from the statute, the Agreements and the resulting transactions. The Court already has ruled that the statute and the Agreements do not give rise to a duty. Plaintiff cites three authorities for the proposition that the added fact of *participation* gives rise to a duty: *Roland v. Christian*, 69 Cal. 2d 108, 111–13 (1968), *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 46 (1975), and *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425, 434–35 (1976).

None of these decisions are on point factually. They represent a negligence doctrine that emphasizes foreseeability as the crucial factor in determining whether a duty existed. If the harm was foreseeable, the reasoning goes, the duty likely existed. This approach is epitomized by *Tarasoff*'s statement that "[a]s a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." 17 Cal. 3d at 434–35.

Subsequent to those decisions, the California Supreme Court tempered its emphasis on foreseeability. "[F]oreseeability is not synonymous with duty; nor is it a substitute." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999). Plaintiff is attempting to turn back the clock to a time when it was reasonable to blur the line between foreseeability and duty. The California Supreme Court has made clear that this era is long gone. Plaintiff's proposed amendment therefore would not state a negligence claim against defendants. Allowing amendment on this claim therefore would be futile.

**5. OTHER CLAIMS — ACCOUNTING AND UNJUST ENRICHMENT.**

Plaintiff's opening brief did not provide any argument that the proposed third amended complaint would state a claim for accounting or for unjust enrichment, the only other bases for liability plaintiff asserts. Plaintiff failed to provide such argument despite the Court's order that the motion should "explain specifically . . . why [the proposed amendment] . . . would make a difference" (Order Dismissing Second Amended Comal. 18).

This order holds that amendment of the complaint on those claims also would be futile. Amendment of the accounting claim would be futile for the same reason stated in the order dismissing the second amended complaint:

8

> Plaintiff's accounting claim cannot stand independently. It is merely derivative of other claims. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833 (Cal. Ct. App. 1998); *see also Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) . . . . There are no viable independent claims. The accounting claim therefore fails. Even if there were viable claims, the accounting claim would not survive because no action for accounting may be maintained if there is an adequate remedy at law. *Faivre v. Daley*, 93 Cal. 664, 673 (1892); *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (Cal. Ct. App. 1977). If the other claims here were viable, they would provide plaintiff with an adequate remedy at law

(Order Dismissing Second Amended Comal. 17).

In its reply brief, plaintiff raises, for the first time, argument in support of its proposed accounting claim. Such sandbagging cannot be considered in support of the motion. Even if the arguments had been made in the opening brief, however, they would not have carried the day.

Plaintiff takes issue with the Court's previous order by claiming that "none of the cases cited in the Order holds that accounting claims are dependent on other claims" (Reply Br. 8). The order, however, cited *Janis*, which stated: "Janis's sole remaining cause of action was for an accounting. A right to an accounting is derivative; it must be based on other claims. Here, because all of Janis's other claims fail, so too does the one for an accounting." 68 Cal. App. 4th at 833.

Plaintiff also claims that *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, held — contrary to *Janis* — that an accounting may be a stand-alone claim. *Civic Western*, however, did not so hold. In that decision, the trial court sustained a demurrer to a cross-complainant's complaint. The Court of Appeal reversed as to *three* causes of action in the cross-complaint — accounting, trespass and forcible entry. The accounting cause of action never stood alone. *Id.* at 15–20.

Plaintiff also claims that the accounting claim should stand because "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable" (Reply Br. 9 (citing *Civic W.*, 66 Cal. App. 3d at 14)). Allegations of complicated accounts, however, are not enough to state a claim for an accounting, as *Civic Western* itself stated. *See* 66 Cal. App. 3d at 14 (holding that a suit for an accounting "will not lie where it appears from the complaint that

9

1  none is necessary or that there is an adequate remedy at law"). If there were further discovery
2  in this action, it likely would allow plaintiff to calculate the proper price, thereby obviating the
3  need for an accounting and affording plaintiff a remedy at law.

4  Plaintiff also claims that "an accounting claim should be sustained where one party
5  holds exclusive access to information that determines compensation due to another party"
6  (Reply Br. 7). Here, no compensation is involved. Furthermore, review of the decisions
7  plaintiff cites does not generate sufficient support for the claim here. In *Wolf v. Superior Court*
8  *of Los Angeles County*, 107 Cal. App. 4th 25, 35 (Cal. Ct. App. 2003), the parties had a contract
9  that called for an accounting. Here, there is no viable contract claim. *Glue-Fold, Inc. v.*
10 *Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023, n.3 (Cal. Ct. App. 2000), actually supports
11 defendants by stating that an accounting is a cause of action available to a "wronged fiduciary"
12 and is "dependent upon a substantive basis for liability . . . ." Here, there is no fiduciary
13 relationship and no substantive basis for liability. *Richelle L. v. Roman Catholic Archbishop*,
14 106 Cal. App. 4th 257, 270 (Cal. Ct. App. 2003), concerned tort allegations against a priest for
15 sexual conduct. It did not even mention a claim for accounting.

16 *Keeble v. Brown*, 123 Cal. App. 2d 126, 133 (Cal. Dist. Ct. App. 1954), stated that a
17 fiduciary relationship is required to support an accounting claim. Even if a fiduciary
18 relationship were required, it would not be sufficient because an independent basis of liability
19 also is required. Furthermore, although plaintiff would allege a fiduciary relationship (Proposed
20 Compl. ¶ 78), this is a purely conclusory allegation couched in legal terms, with no supporting
21 facts. Plaintiff makes various arguments about why defendants should be treated as having a
22 "confidential" or fiduciary obligation to plaintiff. These arguments are repeated verbatim from
23 plaintiff's opposition to defendants' previous motion to dismiss (Pls.' Opp. to Defs.' Mot. to
24 Dismiss Second Amended Compl. at 15–17). The arguments were considered then and
25 rejected. There is no need to address them further.

26 Plaintiff provides no argument as to why its unjust-enrichment claim is viable. This
27 claim was made in the first amended complaint. The Court held then that: "As for unjust
28 enrichment, no decisions have been cited involving our unusual fact pattern. In the absence of

California authority on point, this order declines to extend the theory of unjust enrichment to the scenario alleged in the complaint" (Order Granting [First] Mot. to Dismiss 11). The situation remains unchanged. The proposed amendment therefore would be futile.

## CONCLUSION

The proposed third amended complaint would be futile. Plaintiff's request for leave to file it is therefore **DENIED**. The action is **DISMISSED WITH PREJUDICE**. **THE CLERK SHALL CLOSE THE FILE.**

**IT IS SO ORDERED.**

Dated: July 28, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE