United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE COUNTY OF SANTA CLARA, and
THE COUNTY OF SANTA CRUZ,

    Plaintiffs,

  v.

ASTRA USA, INC., et. al.,

    Defendants.

No. C 05-03740 WHA

**ORDER RE MERCK'S DISCOVERY VIOLATION**

In this action, two California counties allege that defendant pharmaceutical firms overcharged them by charging prices for drugs greater than the ceiling price imposed by Section 340B of the Public Health Service Act of 1992 and contractual agreements thereunder. Ceiling prices under the 340B Program are calculated using average manufacturer price ("AMP") and best price ("BP"). After multiple trips to the court of appeals, a March 19 order set a schedule for discovery in this action regarding the extent to which plaintiffs could discover data behind the AMP and BP numbers reported to the federal agency so as to try to prove that defendant pharmaceutical firms overcharged plaintiffs. Pursuant to the March 19 order (Dkt. No. 605), discovery would proceed in stages. In the first stage of discovery, defendants were ordered to produce by noon on April 30 the following:

> 1.    All information responsive to plaintiffs' interrogatories numbers 1 through 4, regarding information underlying defendant manufacturers' determinations of AMP and BP.

    2. All quarterly and monthly or other periodic reports of AMP and BP filed with CMS, if not already produced.

    3. All work papers prepared or used by defendants or their agents or consultants in preparation of AMP or BP.

    4. All communications and audits with or by CMS or IROs concerning the accuracy of AMPs and BPs in said reports.

    5. All summaries and/or descriptions of guidelines or standard procedures or methods to be used by the defendants to prepare the quarterly reports to CMS.

    6. Documents sufficient to identify the National Drug Codes for covered drugs with respect to which defendants were responsible for reporting AMPs and BPs to CMS.

    7. Documents including organization charts, sufficient to show defendants' management structure and hierarchy and the positions and individuals responsible for or involved in determining AMP, BP and URA.

    8. All materials explaining how the computer tracking systems worked to flag and determine the AMP and BP.

    9. All invoices and other data necessary to verify the accuracy (or not) of the AMP and BP for the top three drugs sold by each defendant to each plaintiff for three quarterly reports to be selected by plaintiffs (said selection to be made in writing by March 31, 2010 at Noon.)

Based on the results of Stage One discovery, the parties would then file proposals for Stage Two discovery.

  After the deadline for production of Stage One discovery, defendant Merck disclosed for the first time that it would be unable to fully comply with its disclosures required by the March 19 order. In particular, Merck did not produce all responsive emails for the period of September 2002 to August 2004, which it explained was due to technical problems retrieving data from some of its backup tapes (Hasson Letter at 3). Merck submitted a sworn declaration from James Roberts, an executive director in Merck's technical services organization who was responsible for the overall protection of Merck's e-ail system backups from January 2004 to November 2009. According to Mr. Roberts's sworn declaration, 39 of the 206 backup tapes at issue had been

1   wholly or partially overwritten when Merck's backup system was updated in December 2008
2   (Roberts Decl. at 5).  Merck's outside vendor Gallivan Gallivan & O'Melia was attempting to
3   recover data which was potentially overwritten (*ibid.*)

4         Joseph Pasquale is a manager of Merck's data protection group who assisted with the
5   management and maintenance of the backup tape archiving systems at issue and who undertook
6   an investigation to determine the cause of the overwriting of the backup tapes.  According to his
7   sworn declaration, the problem was caused in 2009 when Merck upgraded its system of backing
8   up information on tapes by installing a new server (Pasquale Decl. at 4).  Mr. Pasquale declares
9   that the new server responsible for management of the system's tape library failed to carry
10  forward the system's historical cataloguing of tapes, and therefore failed to recognize many of the
11  tapes containing emails from 2002–04.  Failing to recognize them, it assumed these tapes were
12  avaiable for use for storing new data and used them, overwriting previously stored data (*id.* at
13  4–5).

14        Pursuant to a May 4 order, both sides were ordered to respond whether Merck's failure to
15  comply with the March 19 order, to seek timely relief, or to properly preserve backup tapes
16  should result in an adverse penalty against it (Dkt. No. 612).  Plaintiffs argued that Merck should
17  be sanctioned by being through an adverse inference instruction due to its destruction of emails in
18  2008.  A party seeking an adverse inference instruction based on the destruction of evidence must
19  establish (1) that the party having control over the evidence had an obligation to preserve it at the
20  time it was destroyed, (2) that the records were destroyed with a culpable state of mind, and (30
21  that the destroyed evidence was relevant to the party's claim or defense such that a reasonable
22  trier of fact could find that it would support that claim or defense.  *See In re Napster, Inc.*
23  *Copyright Litig.*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006).

24        It is undisputed that Merck had an obligation — with which it had previously represented
25  that it was complying — to preserve all potentially relevant evidence since this action was filed in
26  2005 (2008 Joint Case Management Statement (Dkt. No. 230) at 8).  Merck further admits that its
27  discovery team first learned of the problem with its backup tapes on or about April 12 (Claire
28

3

Decl. at 3). It is disappointing that Merck did not act more promptly to notify the Court of its inability to comply until after the April 30 deadline.

It is unclear at this time, however, to what extent potentially relevant data has been actually lost. Merck submits that it may be able to restore some of the missing data from other sources, and is currently evaluating and analyzing its files, datasets and technologies in an attempt to do so (Kemp Decl. ¶ 3; Leissler Decl. ¶ 15). It is therefore premature to decide whether an adverse inference instruction or other penalty is appropriate at this time. Merck is ordered to submit a written report no later than **NOON ON MAY 31, 2010**, explaining the full extent of any loss of email or other potentially relevant data. A hearing regarding deadlines and potential penalties with respect to Merck shall be held on **JUNE 15, 2010, AT 11:00 A.M.**

**IT IS SO ORDERED.**

Dated: May 18, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4